FILED
CLERK, U.S. DISTRICT COURT
9/27/2017
CENTRAL DISTRICT OF CALIFORNIA
BY: LH DEPUTY

DAVID C. SHONKA
Acting General Counsel
CHARLES A. HARWOOD
Regional Director
ELEANOR DURHAM, MD Bar
NADINE S. SAMTER, WA Bar # 23881
Email: edurham@ftc.gov/nsamter@ftc.gov
Federal Trade Commission
915 2nd Ave., Suite 2896, Seattle, WA 98174
(206) 220-4476 (Durham)/(206) 220-6366 (fax)
MARICELA SEGURA, CA Bar #225999
Email: msegura@ftc.gov
10990 Wilshire Blvd., Los Angeles, CA 90024
(310) 824-4343/(310) 824-4330 (fax)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FEDERAL TRADE COMMISSION,

Plaintiff,

vs.

ALLIANCE DOCUMENT PREPARATION, LLC, also dba EZ Doc Preps, Grads Aid, and First Document Aid; SBS CAPITAL GROUP, INC., also dba Grads United Discharge; SBB HOLDINGS, LLC, also dba EZ Doc Preps, Allied Doc Prep, and Post Grad Services; FIRST STUDENT AID, LLC; UNITED LEGAL CENTER, LLC, also dba Post Grad Aid, Alumni Aid Assistance, and United Legal Discharge; UNITED LEGAL CENTER, INC., also dba United Legal Discharge; ELITE CONSULTING SERVICE,

Civ. No. LA17CV07048-SJO(KSx)

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

**FILED UNDER SEAL**

LODGED
CLERK, U.S. DISTRICT COURT
9/25/17
CENTRAL DISTRICT OF CALIFORNIA
BY: LH DEPUTY

LLC, fka FIRST GRAD AID, LLC, also dba First Grad Aid and; GRADS DOC PREP, LLC, also dba Academic Aid Center, Academic Protection, Academy Doc Prep, and Academic Discharge; ELITE DOC PREP, LLC, also dba Premier Student Aid; BENJAMIN NADERI aka Benjamin Pournaderi and Benjamin Brooks; SHAWN GABBAIE aka Shawn Goodman; AVINADAV RUBENI aka Avi Rubeni; MICHAEL RATLIFF; RAMIAR REUVENI aka Rami Reuveni; and FARZAN AZINKHAN,

Defendants, and

DIRECT CONSULTING SERVICE, LLC; and CAPITAL DOC PREP, INC.,

Relief Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act") 15 U.S.C. §§ 6101-6108, and to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with their deceptive marketing and sale of student loan debt relief services.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345; 15 U.S.C. §§ 45(a), 53(b), and 6102(c).

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c) and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive or abusive telemarketing acts or practices.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys to enjoin violations of the FTC Act, and the TSR to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2), and 6102(c).

## DEFENDANTS

6. Alliance Document Preparation, LLC (“Alliance”), is a California limited liability corporation created April 13, 2015. Alliance has done business as EZ Doc Preps, Grads Aid, and First Document Aid. Alliance has held itself out as doing business at 9060 Santa Monica Blvd., #105, Los Angeles, CA 90069; 9056 Santa Monica Blvd., #208, Los Angeles, CA 90069; and 1435 S. La Cienega Blvd., 2B, Los Angeles, CA 90035. At all times material to this Complaint, acting alone or in concert with others, Alliance has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

7. SBS Capital Group, LLC ("SBS"), is a California corporation created March 20, 2017. SBS has held itself out as doing business at 1575 Westwood Blvd, Ste. 303, Los Angeles, CA 90024, an address affiliated with Grads United Discharge. At all times material to this Complaint, acting alone or in concert with others, SBS has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

8. SBB Holdings, LLC ("SBB"), is a California limited liability corporation created November 23, 2015. SBB has done business as EZ Doc Preps, Post Grad Aid, and Allied Doc Prep. SBB has held itself out as doing business at 9056 Santa Monica Blvd., #303, Los Angeles, CA 90069; PO Box 691004, Los Angeles, CA 90069; and 1435 S. La Cienega Blvd., 2B, Los Angeles, CA 90035. At all times material to this Complaint, acting alone or in concert with others, SBB has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

9. First Student Aid, LLC ("FSA"), is a California limited liability corporation created on August 14, 2015. FSA has held itself out as doing business at 9056 Santa Monica Blvd., #208, Los Angeles, CA 90069, and 1435 S. La Cienega Blvd., 2B, Los Angeles CA, 90035. At all times material to this Complaint, acting alone or in concert with others, FSA has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

10. United Legal Center, LLC ("ULC"), is a Nevada limited liability corporation created August 21, 2015. ULC has also done business as Post Grad Aid, Alumni Aid Assistance, and United Legal Discharge. ULC has held itself out as doing business at 1435 S. La Cienega Blvd., 2B, Los Angeles, CA 90035. At all times material to this Complaint, acting alone or in concert with others, ULC has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

11. United Legal Center, Inc. ("ULC, Inc."), is a California corporation created on February 20, 2017. ULC, Inc., also has done business as United legal Discharge. ULC, Inc., has held itself out as doing business at 1435 S. La Cienega Blvd., 2A, Los Angeles, CA 90035. At all times material to this Complaint, acting alone or in concert with others, ULC, Inc. has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

12. Elite Consulting Service, LLC ("ECS"), is a California limited liability corporation created November 17, 2015, as First Grad Aid, LLC. On January 17, 2017, First Grad Aid changed its name to ECS, which continues to do business under the name First Grad Aid. ECS has held itself out as doing business at 9056 Santa Monica Blvd., #208, Los Angeles, CA 90035; 1875 Century Park East, Ste. 700, Century Park, CA 90067; and 1435 S La Cienega Blvd., 2B, Los Angeles, CA 90035. At all times material to this Complaint, acting alone or in concert with others, ECS has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

13. Elite Doc Prep, LLC ("Elite"), is a California limited liability corporation created December 15, 2015. Elite has done business as Premier Student Aid. Elite has held itself out as doing business at 9060 Santa Monica Blvd, Los Angeles, CA 90069. Elite uses the telephone account in the name of EZ Doc Preps and United Legal Center at 1435 S La Cienega Blvd., 2B, Los Angeles, CA 90035, to make sales to consumers. At all times material to this Complaint, acting alone or in concert with others, Elite has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

14. Grads Doc Prep, LLC ("GDP"), is a California limited liability corporation created August 31, 2016. GDP has done business as Academic Aid Center, Academic Protection, Academic Discharge, and Academy Doc Prep. GDP has held itself out as doing business at PO Box 691004, Los Angeles, CA 90069; and 1999 Ave. of the Stars, #1100, Century City, CA 90067. At all times material to

this Complaint, acting alone or in concert with others, GDP has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

15. Benjamin Naderi ("Naderi"), aka Benjamin Pournaderi and Benjamin Brooks, is the sole owner of Defendants Alliance and SBS and co-owns defendant SBB with defendant Shawn Gabbaie. Naderi is a member or a manager of Defendant FSA. Naderi is responsible for multiple telephone lines used by Defendants to market their services, he has registered multiple Internet domain names on behalf of Defendants, and he is the signatory on merchant and bank accounts used by the Defendants. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Naderi resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

16. Shawn Gabbaie ("Gabbaie"), aka Shawn Goodman, is a member or manager of defendant FSA, and co-owner with defendant Naderi of SBB. Gabbaie is responsible for multiple telephone lines used by Defendants to market their services, he has registered multiple Internet domain names on behalf of Defendants, and he is the signatory on merchant and bank accounts used by the Defendants. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the practices of the acts and practices set forth in this Complaint. Defendant Gabbaie resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

17. Ramiar Reuveni ("Reuveni"), aka Rami Reuveni, is the sole owner of GDP. He pays for the domain registrations for the URLs academicaidcenter.com,

academicprotection.com, academic discharge, alumniaidassociation.org, unitedlegalcenter.com, and gradsuniteddischarge.com. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Reuveni resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

18. Avinadav Rubeni ("Rubeni"), aka Avi Rubeni, is an owner and manager of ULC and owner and CEO of ULC, Inc. Rubeni is responsible for multiple telephone lines used by Defendants to market their services, he has registered multiple Internet domain names on behalf of Defendants, and he is the signatory on merchant and bank accounts used by the Defendants. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Rubeni resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

19. Farzan Azinkhan ("Azinkhan") is the sole owner of Elite. He is signatory to the bank account for Elite and is the domain registrant for the URLs elitedocprep.com, gradcounselor.com, and premierstudentaid.com. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the practices of the corporate defendants, including the acts and practices set forth in this Complaint. Defendant Azinkhani resides in this district and, in connection with the matters

alleged herein, transacts or has transacted business in this district and throughout the United States.

20. Michael Ratliff ("Ratliff") is the sole owner of defendant ECS. He is signatory to the bank account for ECS and is the domain registrant for the URLs eliteconsultingservice.com and firstgradaid.com. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint, in this district and throughout the United States. Defendant Ratliff resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

**RELIEF DEFENDANTS**

21. Direct Consulting Service, LLC ("Direct"), is a California limited liability corporation created September 29, 2015, and fully owned by Defendant Naderi. Direct has held itself as doing business at 9056 Santa Monica Blvd., #208, Los Angeles, CA 90069. Direct has received assets that can be traced directly to Defendants' deceptive acts or practices alleged below, and it has no legitimate claim to those assets. Direct transacts or has transacted business in this District.

22. Capital Doc Prep, Inc. ("Capital"), is a California corporation created March 20, 2017, and fully owned by Defendant Naderi. Capital has held itself out as doing business at 369 S. Doheny Dr., Ste. 1124, Beverly Hills, CA 90211 and 1435 S. La Cienega Blvd., 2B, Los Angeles, CA 90035. Capital has received assets that can be traced directly to Defendants' deceptive acts or practices alleged below, and it has no legitimate claim to those assets. Capital transacts or has transacted business in this District.

**COMMON ENTERPRISE**

23. Defendants have engaged in the business practices described below through an interrelated network of companies that market, offer for sale, and sell the same

products or services, use identical contracts, provide access to online consumer accounts using the same online portal; maintain a shared customer database; share employees; use the same phone room and operate out of the same locations; and commingle funds. As a result, Defendants Alliance, SBS, SBB, FSA, ULC, ULC, Inc., ECS, Elite, and GDP (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the unlawful acts and practices described below, and each of them is jointly and severally liable for the acts and practices alleged herein. Defendants Naderi, Gabbaie, Reuveni, Rubeni, Azinkhan, and Ratliff (collectively, "Individual Defendants") have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Corporate Defendants that constitute the common enterprise.

**COMMERCE**

24. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANTS' DECEPTIVE STUDENT LOAN DEBT RELIEF OPERATION**

25. Since at least April 2015, Defendants have targeted alumni of for-profit colleges who are struggling to repay, or are unable to repay, their federal student loans. They deceptively claim that they will qualify or approve consumers for, or enroll consumers in, programs that provide loan forgiveness, permanently reduced monthly payments, reduced or eliminated interest rates, or loan discharge. Defendants often lead consumers to believe that they are affiliated with or work directly with the U.S. Department of Education ("ED"), the government, or the consumer's loan servicer, or that they will assume the consumer's student loans.

26. In exchange for the promised student loan debt relief, Defendants have charged illegal upfront fees of as much as $1000. Consumers who already cannot afford their loan payments thereby lose substantial sums of money to Defendants,

who have generated at least $20 million in revenues from their unlawful scheme.

**BACKGROUND ON STUDENT LOAN FORGIVENESS AND REPAYMENT PROGRAMS**

27. Student loan debt is the second largest class of consumer debt; more than 42 million Americans collectively owe $1.3 trillion. The student loan market shows elevated levels of distress relative to other types of consumer debt.

28. To address this mounting level of distressed debt, the ED and state government agencies administer a limited number of student loan forgiveness and discharge programs. Most consumers, however, are not eligible for these programs because of strict eligibility requirements. For example, one program requires the consumer to demonstrate a total and permanent disability; another applies only to consumers whose school closed while the consumer was still enrolled. A third program, the Borrower Defense to Repayment ("BDR"), may provide a loan discharge if the school, through an act or omission, violated state law directly related to the borrower's federal student loan or to the educational services for which the loan was provided.

29. Other forgiveness programs require working in certain professions for a period of years. Teacher Loan Forgiveness applies to teachers who have worked full-time for five years in a low-income elementary or secondary school or educational service agency. Public Service Loan Forgiveness ("PSLF") applies to employees of governmental units or non-profit organizations who make timely monthly payments for a period of ten years while employed in the public sector.

30. The federal government also offers loan forgiveness through income-driven repayment ("IDR") programs that enable borrowers to reduce their monthly payments and have portions of their loans forgiven. No loans have been forgiven yet under any of the IDR programs. IDR programs allow eligible borrowers to limit their monthly payments based on a percentage of their discretionary monthly income. To remain in an IDR program, borrowers must recertify their income and

family size annually. Obtaining forgiveness through IDR programs requires a minimum of 20 or 25 years of qualifying payments.

31. Because a borrower's income is likely to fluctuate over the life of the loan, monthly payments under the IDR programs can vary considerably from year to year. If a borrower's income were to increase over the repayment period, for example, the monthly payment amount could correspondingly increase to the point where those payments would pay off the loan before any amount could be forgiven at the end of the repayment term.

32. Consumers can apply for BDR, PSLF, IDR, and other loan repayment and forgiveness or discharge programs through the ED or their student loan servicers at no cost; these programs do not require the assistance of a third-party company or payment of application fees.

33. The ED will grant forbearance while processing applications for an alternative repayment plan, and in some cases of hardship. During forbearance, unpaid interest is added to the principal and the loan balance increases.

**DEFENDANTS' DECEPTIVE MARKETING OF STUDENT LOAN DEBT RELIEF SERVICES**

34. Defendants have marketed their student loan debt relief services primarily via social media platforms, such as Facebook. The Facebook advertisements lure alumni from for-profit colleges — in particular colleges that have been sued by class action litigants or government agencies, such as University of Phoenix, DeVry University, ITT Tech, and the Art Institutes — to call Defendants to obtain loan forgiveness. A typical Facebook advertisement states:

> Art Institutes Loan Forgiveness.
> Call (844) 478-8487 to see if you qualify
> for loan forgiveness due to the recent
> litigation against The Art Institutes.

35. Defendants also cold call consumers sometimes using recorded voice messages stating, for example:

> Hello, this is Alex with the Student Aid Help Department. Your application just came across my desk and you may be eligible for the Obama Student Loan Forgiveness Program. This program is here for a limited time only and subject to approval. Call me at my direct line now to get more information. 310-589-4450. Have a nice day.

36. In telephone calls with consumers, Defendants make multiple misrepresentations regarding their services. For example, Defendants falsely tell consumers they have been qualified for, or approved for reduced monthly payments, often a zero or low monthly payment for the term of the loan, reduced or eliminated interest, loan forgiveness, or discharge. Defendants also falsely tell consumers that they must pay to receive reduced monthly payments, reduced or eliminated interest, loan forgiveness, or discharge. To enhance their credibility and persuade consumers that they are legitimate, Defendants often falsely state or imply that they work with or are affiliated with the ED, the government, or the consumer's loan servicer. In other instances, Defendants claim that they will assume responsibility for consumers' student loans, a claim bolstered when they provided consumers with access to a new online loan account maintained by Defendants. Only the ED can establish qualification for ED programs and third parties cannot take over an ED student loan.

37. Defendants promise to enroll consumers in these programs in exchange for an up-front fee that ranges from $400 to $1000. Defendants often allow a consumer to pay the fee in installments over a three-month period, but tell the consumer that they will not secure the promised relief until after the consumer has paid the full amount of the fee. Defendants often create a sense of urgency by

falsely claiming that the funding provided by the government or lawsuit settlement may not be available if the consumer does not agree to sign up immediately.

38. While Defendants are still speaking with the consumer on the phone, they email the consumer several pages of documents to sign, the last two pages of which are the purported agreement for Defendants' services. Defendants demand consumers sign the agreement quickly, in some instances, requiring consumers to sign the documents from their phones. Defendants often mislead consumers regarding the nature of the documents, telling them that the documents simply provided authorization for payment of the fee, authorization to act on behalf of the consumer with the lender, or that the documents simply reflect what was discussed in the sales call.

39. The agreement signed by the consumer, however, does not reflect the promises made during the sales call. Fine print at the top of the penultimate page of the agreement purports to limit Defendants' obligation to "provid[ing] preparation services to assist consumers who are applying for federal student loans programs using Department of Education (DOE) forms." Defendants never state or even imply during lengthy telephone sales pitches touting loan forgiveness and permanently reduced monthly payments that Defendants do nothing but fill out forms for ED programs. To the contrary, Defendants gear their entire sales pitch toward convincing often reluctant and financially struggling consumers that if they pay Defendants hundreds of dollars, they will obtain relief from unaffordable monthly loan payments.

40. In short, consumers pay Defendants for promised loan forgiveness or permanently reduced monthly payments, but in most instances, receive neither the promised loan forgiveness nor permanently reduced monthly payments. In many instances, consumers are in a worse position after doing business with Defendants than they were before. Consumers are generally unable to obtain a refund from

Defendants, who use the consumer's signed agreement as an excuse for denying a refund request.

**VIOLATIONS OF SECTION 5 OF THE FTC ACT**

41. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts and practices in or affecting commerce."

42. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

**COUNT I**

**(Deceptive Student Loan Debt Relief Representations)**

43. In numerous instances, in connection with the advertising, marketing, promoting, offering for sale, or sale of student loan debt relief services, Defendants have represented, directly or indirectly, expressly or by implication that:

a. Defendants are part of, affiliated with, or work directly with the government, government loan programs, the Department of Education, or consumers' loan servicers;

b. Consumers who purchase Defendants' debt relief services generally will have their monthly payments reduced or their loan balances forgiven in whole or in part; and

c. Consumers are qualified for, or are approved to receive loan forgiveness or other programs that will permanently lower or eliminate their loan payments or balances.

44. In truth and in fact, in numerous instances, in which Defendants have made the representations set forth in Paragraph 43, such representations were false or unsubstantiated at the time the representations were made.

45. Therefore, Defendants' representations as set forth in Paragraph 43 constitute deceptive acts or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**THE TELEMARKETING SALES RULE**

46. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101- 6108. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter.

47. Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as those terms are defined in the TSR, 16 C.F.R. § 310.2 (dd), (ff), and (gg). A "seller" is any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration. Id. 310.2(dd). A "telemarketer" is any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff).

48. Defendants are sellers or telemarketers of "debt relief" services as defined by TSR, 16 C.F.R. § 310.2(o). Under the TSR, "debt relief service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector. 16 C.F.R. § 310.2(o).

49. The TSR prohibits any seller or telemarketer from requesting or receiving payment of any fees or consideration for any debt relief service until and unless:

a. The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and

b. The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor; and

c. To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

i. Bears the same proportional relationship to the total fee for renegotiating, settling, reducing or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

ii. Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt. 16 C.F.R. § 310.4(a)(5)(i).

50. The TSR prohibits sellers and telemarketers from misrepresenting directly or by implication, the seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity. 16 C.F.R. § 310.3(a)(2)(vii).

51. The TSR prohibits sellers and telemarketers from misrepresenting directly or by implication, any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that the consumer may save by using the service. 16 C.F.R. § 310.3(a)(2)(x).

52. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

## COUNT II

## (Advance Fee for Debt Relief Services)

53. In numerous instances in connection with the telemarketing of student loan debt relief services, Defendants have requested or received payment of a fee or consideration for debt relief services before:

a. Defendants have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and

b. The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor.

54. Defendants' acts and practices, as described in Paragraph 53, are abusive telemarketing acts or practices that violate Section 310.4(a)(5)(i) of the TSR, 16 C.F.R. § 310.4(a)(5)(i).

## COUNT III

## (Misrepresentation of Affiliation)

55. In numerous instances, in connection with the telemarketing of student loan debt relief services, Defendants have misrepresented, directly or indirectly, expressly or by implication, that Defendants are affiliated with, or endorsed or sponsored by, the government, government loan programs, the Department of Education, or consumers' loan servicers.

56. Defendants' acts and practices, as described in Paragraph 55, are deceptive telemarketing acts or practices that violate Section 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii).

**COUNT IV**

**(Material Debt Relief Misrepresentations)**

57. In numerous instances, in connection with the telemarketing of student loan debt relief services, Defendants have misrepresented, directly or indirectly, expressly or by implication, material aspects of their debt relief services, including, but not limited to that:

a. Consumers who purchase Defendants' debt relief services generally will have their monthly payments reduced or their loan balances forgiven in whole or in part; and

b. Consumers are qualified for, or are approved to receive loan forgiveness or other programs that will permanently lower or eliminate their loan payments or balances.

58. Defendants' acts and practices, as described in Paragraph 57, are deceptive telemarketing acts or practices that violate Section 310.3(a)(2)(x) of the TSR, 16 C.F.R. § 310.3(a)(2)(x).

**COUNT V**

**(Disgorgement of Ill-Gotten Gains of Relief Defendants)**

59. Relief Defendants Direct and Capital have received, directly or indirectly, funds and other assets from Defendants that are traceable to funds obtained from Defendants' customers through the unlawful acts or practices described herein. Relief Defendants Direct and Capital have no legitimate claim to Defendants' customers' funds or other assets and will be unjustly enriched if they are not required to disgorge the assets or the value of benefits received as a result of Defendants' unlawful acts or practices.

60. By reason of the foregoing, Relief Defendants Direct and Capital hold funds and assets in constructive trust for the benefit of Defendants' consumers.

## CONSUMER INJURY

61. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THE COURT'S POWER TO GRANT RELIEF

62. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

63. Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

64. Wherefore, Plaintiff Federal Trade Commission, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including, but not limited to, preliminary injunction, an order freezing Defendants' assets, appointment of a temporary receiver, immediate access to business premises, and expedited discovery;

B. Enter a permanent injunction to prevent future violations of the FTC Act and the TSR;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the TSR, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: Sept. 25, 2017

Respectfully submitted,
DAVID C. SHONKA
Acting General Counsel
CHARLES A. HARWOOD
Regional Director

[signature]

ELEANOR DURHAM
NADINE S. SAMTER
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION