DAVID C. SHONKA
Acting General Counsel
CHARLES A. HARWOOD
Regional Director
ELEANOR DURHAM, MD Bar
Email:  edurham@ftc.gov
NADINE S. SAMTER, WA Bar #23881
Email:  nsamter@ftc.gov
Federal Trade Commission
915 2nd Ave., Suite 2896, Seattle, WA 98174
(206) 220-4476 (Durham)/(206) 220-4479 (Samter)
(206) 220-6366 (fax)
MARICELA SEGURA, CA Bar # 225999
Email:  msegura@ftc.gov
10990 Wilshire Blvd., Suite 400, Los Angeles, CA 90024
(310) 824-4343/(310) 824-4330 (fax)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ALLIANCE DOCUMENT PREPARATION LLC, also dba EZ Doc Preps, Grads Aid, and First Document Aid, *et al.*,<br><br>Defendants, and<br><br>DIRECT CONSULTING SERVICE LLC; and CAPITAL DOC PREP, INC.,<br><br>Relief Defendants. | Civ. No. CV 17-7048 SJO (KSx)<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Hearing Date:  Nov. 1, 2017 at 9:00am**<br>**Judge S. James Otero**<br>**Courtroom 10C** |

Defendants contend in their Opposition that Plaintiff Federal Trade Commission ("FTC") has failed to show that it is likely to prevail on the merits of its allegations that Defendants violated Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the Telemarketing Sales Rule, 16 C.F.R. Part 310. (Dkt. No. 40). They argue that (1) they always disclose to consumers the true nature of their services, and (2) their clients received the promised services and benefitted from them.[1] (*Id*.) However, the evidence they submit does not establish these propositions and actually buttresses the FTC's allegations that Defendants systematically obfuscated the true nature of their services in their sales presentations to collect millions of dollars in illegal advance fees. Scripts and training materials obtained during the immediate access at their premises confirm the evidence submitted by the FTC showing that Defendants misrepresented their services[2] and further demonstrates that Defendants purposefully instructed their employees to prey on vulnerable and emotionally overwhelmed consumers in order to persuade them that Defendants were their only hope of getting debt relief.[3] A preliminary injunction is absolutely necessary to protect consumers and Plaintiff has met its burden showing that it is likely to succeed on the merits.

## I. Defendants Do Not Adequately Disclose the Limited Nature of Their Services

---

[1] Defendants assert that they are not offering "debt relief services," however, their business model of charging a fee based on the money consumers purportedly will save (Dkt. No. 24, p. 11, lns. 20-23; Dkt No 24-1, Exh. 6, p. 29) is a common debt relief service practice and furthers the misimpression that they are offering a debt reduction service. *See* 16 C.F.R. §310.4(a)(5)(i)(C)(1). This type of fee structure is distinctly different from a document preparation service such as H&R Block, which charges a flat fee based on the forms that are completed and filed with the IRS.

[2] Dec. of Tina Kondo (Oct. 23, 2017) ("Kondo Dec.") at ¶¶ 9-22, pp. 1-12; Atts. A-M, pp. 13-72 (filed concurrently with Plaintiff's Opposition to Defendants' *ex parte* App. For live Testimony Dkt. No. 44 ("FTC Opp.")).

[3] Kondo Dec. at ¶ 12, Att. D, pp. 31-45.

Reply to Defendants' Opposition to PI - page 1

Defendants attempt to refute the consumer testimony the FTC submitted by pointing to one recently-minted script that admittedly was not in use prior to March 2017. (Dkt. No. 40, pp. 6-7.) This script, however, does not refute the voluminous evidence the FTC has provided showing that Defendants consistently misrepresent the services they provide in their sales pitches. Such evidence includes not only consumer testimony, but actual recordings of deceptive sales pitches recorded after March 2017. Even this recently sanitized script does not inform consumers that the service Defendants will perform in exchange for a substantial fee is merely the completion of DOE-published forms for DOE payment plans and programs. In any event, both the sales and compliance scripts found at employee workstations during the immediate access are consistent with the misrepresentations detailed in consumer declarations, complaints, and recorded sales pitches (see generally Kondo Dec.) and belie Defendants' claims that employees were following the new script and that the "disclaimers" in it were widely used. (Dkt. No. 24 pp. 13-14, lns 23-6 (employee acknowledgements of the new script were signed between September 26 and 28, 2017.)

The disclaimers in the new "Forgiveness Script" submitted by Defendants also do not address the root problem with Defendants' sales pitches. (Dkt. No. 40-1, Ex. A.)[4] The script never actually states that the Defendants are only providing document preparation for DOE payment plans and programs. This is because, while some consumers might be willing to pay the exorbitant fees Defendants require to obtain loan forgiveness, they are unlikely to be willing to pay such fees for Defendants to complete the four-page DOE form needed to apply for income-

---

[4] Neither does the compliance script attached to Naderi's declaration provide evidence that Defendants disclosed to consumers that they offer only a document preparation service for DOE payment plans and programs. *See* FTC Opp. at pp. 5-7, filed concurrently herewith.

driven repayment plans,[5] which Defendants refer to as "loan forgiveness."[6]

It is also disingenuous for Defendants to blame consumers for not reading the contracts carefully to discover the true nature of the services they provide. (Dkt. No. 40, p. ). Defendants know that after a lengthy sales call, consumers are on "mental and emotional overload," and they have instructed their sales agents to "build trust" so that they can casually transition to the "contract generation phase" with the consumer in a state of mind that he or she "does not feel the need to read the documents."[7] This ethos is entirely consistent with the consumer testimony already before the Court stating that Defendants moved consumers quickly through the signing process and discouraged them from reading the documents they were signing. In short, nothing the Defendants have submitted – including the new materials they purport to have been using – disproves the Plaintiff's claims.

## II. That Some Consumers Have Qualified For And Benefitted From DOE Programs Does Not Absolve Defendants From Liability

Defendants attempt to make much of the fact that because some consumers received a benefit from enrollment in DOE plans, Defendants did not mislead them. This misapprehends the basis of the FTC's allegations. The evidence the FTC has submitted demonstrates that Defendants deceived consumers into believing that they were qualifying for, approving for, and enrolling consumers in programs that would provide loan forgiveness. What most consumers really got

---

[5] The form used for all DOE income-driven repayment programs is Att. A to this Reply.

[6] Consumer declarations, scripts, and training materials all establish that Defendants primary offering was one of the DOE income-driven payment plans – which Defendants refer to as "loan forgiveness." *See, e.g.*, Declaration of Amy Brannon-Quale (Oct. 23, 2017) ("ABQ Dec.") Att. F, pp. 91-93,(filed concurrently herewith) (Defendants explain that up, to the date of the training, they have not trained the sales agents properly about the loan forgiveness programs they sell).

[7] Kondo Dec., ¶ 12, p. 6; Att. D, pp. 42, 45.

Reply to Defendants' Opposition to PI - page 3

was an *application form* filled out for free DOE payment plans that *could* result in loan forgiveness, but only if their income remained low for 20 years. In any event, "The existence of some satisfied customers does not constitute a defense under the FTC [Act]." *FTC v. Stefanchik*, 559 F.3d 924, 929 n.18 (9th Cir. 2009) (quoting *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 572 (7th Cir.1989)).

Moreover, Defendants vastly overstate the number of consumers for whom they have provided a purported benefit. Defendant Naderi claims that the services that they provided benefitted 30,000 to 40,000 clients. (Dkt. No. 40-1, at p. 6, ¶ 22). In fact, 60% of consumers who enrolled in their program never received "benefit" because they either cancelled or revoked their agreements with Defendants, by not paying or not communicating with Defendants.[8] A "return" rate of 60% is a huge red flag indicating that consumers have been misled.[9] As such, the fact that some consumers may have received some benefit does not contradict the FTC's evidence showing that Defendants engaged in deceptive sales practices and charged illegal advance fees.

### III. Defendants' Egregious Conduct Warrants Continuing the Asset Freeze and Appointment of the Receiver

Defendants request that the Court lift the asset freeze and the receivership to allow Defendants to resume their business. Based on the evidence found on Defendants' premises, (*see,* Kondo Dec and ABQ Dec., generally) and the Receiver's Preliminary Report describing Defendants' willful obstruction and destruction of documents and other evidence, (Dkt. No. 24), Defendants have demonstrated that they cannot be trusted to operate this business legitimately.

---

[8] Declaration of Laureen France (Oct. 19, 2017) at ¶ 6, filed concurrently herewith.
[9] High reversal or return rates are an indicia of fraud. *FTC v.Windward Mktg.*, No. 1:96-CV-615-FMH, 1997 U.S. Dist. LEXIS 17114, at *33-38 (N.D. Ga. Sept. 30, 1997); *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d. 1048, 1075 (C.D. Cal. 2012); *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1222 (D. Nev. 2011).

Further, an audio file, recorded May 10, 2017, of a call between someone using a phone number affiliated on numerous official records with Naderi, and Salar Tarhour, who is a defendant in another FTC student loan debt relief case, indicates that the Defendants in this case were well aware of the deceptive nature of their business enterprise and frequently changed their business name, address, and phone number to evade law enforcement scrutiny.[10]

The training materials found at Defendant' premises also show that Defendants know that their typical consumer is poor, frightened, and desperate, and they exploit this vulnerability to induce these consumers to pay large fees in the hope of being relieved of their student loan debt, when Defendants in most instances simply fill out a simple 4-page form.[11] This is precisely the kind of case that warrants imposition of a preliminary injunction with a receiver and asset freeze. The Court imposed the receivership and an asset freeze to protect the Court's ability to redress injured consumers, prevent further consumer harm, and to prevent the unjust enrichment of the Defendants. The evidence before the Court compellingly describes Defendants' pervasive and persistently deceptive sales practices and that the FTC is likely to prevail on the merits of its case. Therefore, the FTC respectfully asks the court to enter the requested Preliminary Injunction, including retaining the asset freeze and receivership.

Respectfully submitted,                                    Date: October 23, 2017

/s/Eleanor Durham
ELEANOR DURHAM
NADINE SAMTER
Attorneys for Plaintiff
Federal Trade Commission

---

[10] ABQ Dec. at ¶¶ 9-11; Att. E, pp. 38-39 (The call is largely about a debt invalidation scheme Defendants were developing).
[11] S*ee,*fn. 2*, supra.*

Reply to Defendants' Opposition to PI - page 5

Certificate of Service

    I hereby certify that on October 23, 2017, I caused the foregoing Reply to Defendants' Opposition to Entry of Preliminary Injunction to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all participants in the case who are registered CM/ECF users.  I emailed a copy of the above-referenced pleading to *pro se* litigant Farzan Azinkhan at farzan.azinkhan@gmail.com.

                                                      s/Eleanor Durham
                                                      Eleanor Durham

# INCOME-DRIVEN REPAYMENT (IDR) PLAN REQUEST

**For the Revised Pay As You Earn (REPAYE), Pay As You Earn (PAYE), Income-Based Repayment (IBR), and Income-Contingent Repayment (ICR) plans under the William D. Ford Federal Direct Loan (Direct Loan) Program and Federal Family Education Loan (FFEL) Programs**

OMB No. 1845-0102
Form Approved
Exp. Date 10/31/2018

**IDR**

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## SECTION 1: BORROWER INFORMATION

Please enter or correct the following information.

☐ Check this box if any of your information has changed.

- SSN
- Name
- Address
- City _____ State _____ Zip Code _____
- Telephone - Primary
- Telephone - Alternate
- Email (Optional)

## SECTION 2: REPAYMENT PLAN OR RECERTIFICATION REQUEST

It's faster and easier to complete this form online at StudentLoans.gov. You can learn more at StudentAid.gov/IDR and by reading Sections 9 and 10. It's simple to get repayment estimates at StudentAid.gov/repayment-estimator. If you need help with this form, contact your loan holder or servicer for free assistance. You can find out who your loan holder or servicer is at StudentAid.gov/login. You may have to pay income tax on any loan amount forgiven under an income-driven plan.

1. **Select the reason you are submitting this form (Check only one):**
   - ☐ I want to enter an income-driven plan - Continue to Item 2.
   - ☐ I am submitting documentation for the annual recertification of my income-driven payment - Skip to Item 5.
   - ☐ I am submitting documentation early to have my income-driven payment recalculated immediately - Skip to Item 5.
   - ☐ I want to change to a different income-driven plan - Continue to Item 2.

2. **Choose a plan and then continue to Item 3.**
   - ☐ (Recommended) I want the income-driven repayment plan with the lowest monthly payment.
   - ☐ REPAYE
   - ☐ PAYE
   - ☐ IBR
   - ☐ ICR

3. **Do you have multiple loan holders or servicers?**
   - ☐ Yes - Submit a request to each holder or servicer. Continue to Item 4.
   - ☐ No - Continue to item 4.

4. **Are you currently in deferment or forbearance?**
   After answering, continue to Item 5.
   - ☐ No.
   - ☐ Yes, but I want to start making payments under my plan immediately.
   - ☐ Yes, and I do not want to start repaying my loans until the deferment or forbearance ends.

Note: If you have FFEL Program loans, they are only eligible for IBR. However, you can consolidate your loans at StudentLoans.gov to access more beneficial income-driven repayment plans.

## SECTION 3: FAMILY SIZE INFORMATION

5. **How many children, including unborn children, are in your family and receive more than half of their support from you?** _____

6. **How many other people, excluding your spouse and children, live with you and receive more than half of their support from you?** _____

Note: A definition of "family size" is provided in Section 9. Do not enter a value for you or your spouse. Those values are automatically included in your family size, if appropriate.

Borrower Name _____    Borrower SSN _____

## SECTION 4D: INCOME INFORMATION FOR MARRIED BORROWERS FILING SEPARATELY

17. **Has your income significantly changed since you filed your last federal income tax return?**
    For example, have you lost your job or experienced a drop in income?
    ☐ Yes - Continue to Item 18.
    ☐ No - Provide your most recent federal income tax return or transcript. Skip to Item 19.
    ☐ I haven't filed a federal income tax return in the past two years - Continue to Item 18.

18. **Do you currently have taxable income?**
    Check "No" if you have no taxable income or receive only untaxed income. After answering, continue to Item 19.
    ☐ Yes - You must provide documentation of your income as instructed in Section 5.
    ☐ No.

    Note: Remember, any person who knowingly makes a false statement or misrepresentation on this form can be subject to penalties including fines, imprisonment, or both.

19. **Has your spouse's income significantly changed since your spouse filed his or her last federal income tax return?**
    For example, has your spouse lost a job or experienced a drop in income?
    ☐ Yes - Continue to Item 20.
    ☐ No - Provide your spouse's most recent federal income tax return or transcript. This information will only be used if you are on or placed on the REPAYE Plan. Skip to Section 6.
    ☐ My spouse hasn't filed a federal income tax return in the past two years - Continue to Item 20.

20. **Does your spouse currently have taxable income?**
    Check "No" if your spouse has no taxable income or receives only untaxed income.
    ☐ Yes - Skip to Section 5 and provide documentation of your spouse's income as instructed in that section. This information will only be used if you are on or placed on the REPAYE Plan.
    ☐ No - You are not required to provide documentation of your spouse's income. If you selected "Yes" to Item 18, skip to Section 5 and document your income. If you selected "No" to Item 18, skip to Section 6.

## SECTION 5: INSTRUCTIONS FOR DOCUMENTING CURRENT INCOME

You only need to follow these instructions if, based on your answers in Section 4, you and your spouse (if applicable) were instructed to provide documentation of your current income instead of a tax return or tax transcript.

**This is the income you must document:**

- You must provide documentation of all taxable income you and your spouse (if applicable) currently receive.
- Taxable income includes, for example, income from employment, unemployment income, dividend income, interest income, tips, and alimony.
- Do not provide documentation of untaxed income such as Supplemental Security Income, child support, or federal or state public assistance.

**This is how you document your income:**

- Documentation will usually include a pay stub or letter from your employer listing your gross pay.
- Write on your documentation how often you receive the income, for example, "twice per month" or "every other week."
- You must provide at least one piece of documentation for each source of taxable income.
- If documentation is not available or you want to explain your income, attach a signed statement explaining each source of income and giving the name and the address of each source of income.
- **The date on any supporting documentation you provide must be no older than 90 days from the date you sign this form.**
- Copies of documentation are acceptable.

After gathering the appropriate documentation, continue to Section 6.

## SECTION 7: WHERE TO SEND THE COMPLETED FORM

Return the completed form and any documentation to:
(If no address is shown, return to your loan holder.)

If you need help completing this form call:
(If no phone number is shown, call your loan holder.)

## SECTION 8: INSTRUCTIONS FOR COMPLETING THE FORM

Type or print using dark ink. Enter dates as month-day-year (mm-dd-yyyy). Example: March 14, 2015 = 03-14-2015. Include your name and account number on any documentation that you are required to submit with this form. **Return the completed form and any required documentation to the address shown in Section 7.**

## SECTION 9: DEFINITIONS

**COMMON DEFINITIONS FOR ALL PLANS:**

**Capitalization** is the addition of unpaid interest to the principal balance of your loan. This will increase the principal balance and the total cost of your loan.

A **deferment** is a period during which you are entitled to postpone repayment of your loans. Interest is not generally charged to you during a deferment on your subsidized loans. Interest is always charged to you during a deferment on your unsubsidized loans.

The **William D. Ford Federal Direct Loan (Direct Loan) Program** includes Direct Subsidized Loans, Direct Unsubsidized Loans, Direct PLUS Loans, and Direct Consolidation Loans.

**Family size** always includes you and your children (including unborn children who will be born during the year for which you certify your family size), if the children will receive more than half their support from you.

For the PAYE, IBR, and ICR Plans, family size always includes your spouse. For the REPAYE plan, family size includes your spouse unless your spouse's income is excluded from the calculation of your payment amount.

For all plans, family size also includes other people only if they live with you now, receive more than half their support from you now, and will continue to receive this support for the year that you certify your family size. Support includes money, gifts, loans, housing, food, clothes, car, medical and dental care, and payment of college costs. Your family size may be different from the number of exemptions you claim for tax purposes.

The **Federal Family Education Loan (FFEL) Program** includes Federal Stafford Loans (both subsidized and unsubsidized), Federal PLUS Loans, Federal Consolidation Loans, and Federal Supplemental Loans for Students (SLS).

A **forbearance** is a period during which you are permitted to postpone making payments temporarily, allowed an extension of time for making payments, or temporarily allowed to make smaller payments than scheduled.

The **holder** of your Direct Loans is the U.S. Department of Education (the Department). The holder of your FFEL Program loans may be a lender, secondary market, guaranty agency, or the Department. Your loan holder may use a servicer to handle billing, payment, repayment options, and other communications. References to "your loan holder" on this form mean either your loan holder or your servicer.

A **partial financial hardship** is an eligibility requirement for the PAYE and IBR plans. You have a partial financial hardship when the annual amount due on all of your eligible loans (and, if you are required to provide documentation of your spouse's income, the annual amount due on your spouse's eligible loans) exceeds what you would pay under PAYE or IBR.

The annual amount due is calculated based on the greater of **(1)** the total amount owed on eligible loans at the time those loans initially entered repayment, or **(2)** the total amount owed on eligible loans at the time you initially request the PAYE or IBR plan. The annual amount due is calculated using a standard repayment plan with a 10-year repayment period, regardless of loan type. When determining whether you have a partial financial hardship for the PAYE plan, the Department will include any FFEL Program loans that you have into account even though those loans are not eligible to be repaid under the PAYE plan, except for: **(1)** a FFEL Program loan that is in default, **(2)** a Federal PLUS Loan made to a parent borrower, or **(3)** a Federal Consolidation Loan that repaid a Federal or Direct PLUS Loan made to a parent borrower.

The **poverty guideline amount** is the figure for your state and family size from the poverty guidelines published annually by the U.S. Department of Health and Human Services (HHS). If you are not a resident of a state identified in the poverty guidelines, your poverty guideline amount is the amount used for the 48 contiguous states.

The **standard repayment plan** has a fixed monthly payment amount over a repayment period of up to 10 years for loans other than Direct or Federal Consolidation Loans, or up to 30 years for Direct and Federal Consolidation Loans.

SECTION 10: INCOME-DRIVEN PLAN ELIGIBILITY REQUIREMENTS AND GENERAL INFORMATION

Table 1. Income-Driven Plan Eligibility Requirements and General Information

| Plan Feature | REPAYE | PAYE | IBR | ICR |
|---|---|---|---|---|
| Payment Amount | Generally, 10% of discretionary income. | Generally, 10% of discretionary income. | Never more than 15% of discretionary income. | Lesser of 20% of discretionary income or what you would pay under a repayment plan with fixed payments over 12 years, adjusted based on your income. |
| Cap on Payment Amount | None. Your payment may exceed what you would have paid under the 10-year standard repayment plan. | What you would have paid under the 10-year standard repayment plan when you entered the plan. | What you would have paid under the 10-year standard repayment plan when you entered the plan. | None. Your payment may exceed what you would have paid under the 10-year standard repayment plan. |
| Married Borrowers | Your payment will be based on the combined income and loan debt of you and your spouse regardless of whether you file a joint or separate Federal income tax return, unless you and your spouse (1) are separated or (2) you are unable to reasonably access your spouse's income information. | Your payment will be based on the combined income and loan debt of you and your spouse only if you file a joint Federal income tax return, unless you and your spouse (1) are separated or (2) you are unable to reasonably access your spouse's income information. | Your payment will be based on the combined income and loan debt of you and your spouse only if you file a joint Federal income tax return, unless you and your spouse (1) are separated or (2) you are unable to reasonably access your spouse's income information. | Your payment will be based on the combined income of you and your spouse only if you file a joint Federal income tax return, unless you and your spouse (1) are separated or (2) you are unable to reasonably access your spouse's income information. |
| Borrower Responsibility for Interest | On subsidized loans, you do not have to pay the difference between your monthly payment amount and the interest that accrues for your first 3 consecutive years in the plan. On subsidized loans after this period and on unsubsidized loans during all periods, you only have to pay half the difference between your monthly payment amount and the interest that accrues. | On subsidized loans, you do not have to pay the difference between your monthly payment amount and the interest that accrues for your first 3 consecutive years in the plan. | On subsidized loans, you do not have to pay the difference between your monthly payment amount and the interest that accrues for your first 3 consecutive years of in the plan. | You are responsible for paying all of the interest that accrues. |
| Forgiveness Period | If you only have eligible loans that you received for undergraduate study, any remaining balance is forgiven after 20 years of qualifying repayment. If you have any eligible loans that you received for graduate or professional study, any remaining balance is forgiven after 25 years of qualifying repayment on all of your loans. Forgiveness may be taxable. | Any remaining balance is forgiven after 20 years of qualifying repayment, and may be taxable. | Any remaining balance is forgiven after no more than 25 years of qualifying repayment, and may be taxable. | Any remaining balance is forgiven after 25 years of qualifying repayment, and may be taxable. |

## SECTION 11: SAMPLE PAYMENT AMOUNTS

The tables below provide repayment estimates under the traditional and income-driven repayment plans. These figures are estimates based on an interest rate of 6%, the average Direct Loan interest rate for undergraduate and graduate borrowers. The figures also assume a family size of 1, that you live in the continental U.S., and that your income increases 5% each year. Various factors, including your interest rate, your loan debt, your income, if and how quickly your income rises, and when you started borrowing may cause your repayment to differ from the estimates shown in these tables. These figures use the 2016 Poverty Guidelines and Income Percentage Factors.

**Table 2. Non-Consolidation, Undergraduate Loan Debt of $30,000 in Direct Unsubsidized Loans and Starting Income of $25,000**

| Repayment Plan | Initial Payment | Final Payment | Time in Repayment | Total Paid | Loan Forgiveness |
|---|---|---|---|---|---|
| Standard | $333 | $333 | 10 years | $33,967 | N/A |
| Graduated | $190 | $571 | 10 years | $42,636 | N/A |
| Extended-Fixed | Ineligible | - | - | - | - |
| Extended-Graduated | Ineligible | - | - | - | - |
| PAYE | $60 | $296 | 20 years | $38,105 | $27,823 |
| REPAYE | $60 | $296 | 20 years | $38,105 | $24,253 |
| IBR | $90 | $333 | 21 years, 10 months | $61,006 | $0 |
| ICR | $195 | $253 | 19 years, 6 months | $52,233 | $0 |

**Table 3. Non-Consolidation, Graduate Loan Debt of $60,000 in Direct Unsubsidized Loans and Starting Income of $40,000**

| Repayment Plan | Initial Payment | Final Payment | Time in Repayment | Total Paid | Loan Forgiveness |
|---|---|---|---|---|---|
| Standard | $666 | $666 | 10 years | $79,935 | N/A |
| Graduated | $381 | $1,143 | 10 years | $85,272 | N/A |
| Extended-Fixed | $437 | $437 | 25 years | $130,974 | N/A |
| Extended-Graduated | $300 | $582 | 25 years | $126,168 | N/A |
| PAYE | $185 | $612 | 20 years | $87,705 | $41,814 |
| REPAYE | $185 | $816 | 25 years | $131,444 | $0 |
| IBR | $277 | $666 | 18 years, 3 months | $107,905 | $0 |
| ICR | $469 | $588 | 13 years, 9 months | $89,468 | $0 |

Reply to Defendants' Opp. to PI                                                                                  Att. A