ORIGINAL

1  DAVID C. SHONKA
   Acting General Counsel
2  CHARLES A. HARWOOD
3  Regional Director
   ELEANOR DURHAM, MD Bar
4  NADINE S. SAMTER, WA Bar # 23881
5  Email: edurham@ftc.gov/nsamter@ftc.gov
   Federal Trade Commission
6  915 2nd Ave., Suite 2896, Seattle, WA 98174
7  (206) 220-4476 (Durham)/(206) 220-6366 (fax)
8  MARICELA SEGURA, CA Bar #225999
   Email:  msegura@ftc.gov
9  10990 Wilshire Blvd., Los Angeles, CA 90024
10 (310) 824-4343/(310) 824-4330 (fax)

FILED
CLERK, U.S. DISTRICT COURT

SEP 2 8 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

11           UNITED STATES DISTRICT COURT
12           CENTRAL DISTRICT OF CALIFORNIA

13

CV 17 - 07048 SJO (KS)

14  FEDERAL TRADE COMMISSION,

15                Plaintiff,

16

17                vs.

18  ALLIANCE DOCUMENT
19  PREPARATION, LLC, also dba EZ
    Doc Preps, Grads Aid, and First
20  Document Aid; SBS CAPITAL
21  GROUP, INC., also dba Grads United
22  Discharge; SBB HOLDINGS, LLC, also
    dba EZ Doc Preps, Allied Doc Prep, and
23  Post Grad Services; FIRST STUDENT
24  AID, LLC; UNITED LEGAL CENTER,
    LLC, also dba Post Grad Aid, Alumni
25  Aid Assistance, and United Legal
26  Discharge; UNITED LEGAL CENTER,
27  INC., also dba United Legal Discharge;
28  ELITE CONSULTING SERVICE,

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFF'S *EX PARTE*
APPLICATION FOR TEMPORARY
RESTRAINING ORDER, ASSET
FREEZE, APPOINTMENT OF A
TEMPORARY RECEIVER,
IMMEDIATE ACCESS, LIMITED
EXPEDITED DISCOVERY, AND
OTHER EQUITABLE RELIEF,
AND ORDER TO SHOW CAUSE
WHY PRELIMINARY
INJUNCTION SHOULD NOT
ISSUE

FILED UNDER SEAL

LODGED
CLERK, U.S. DISTRICT COURT

SEP 2 5 2017

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1  DAVID C. SHONKA
   Acting General Counsel
2  CHARLES A. HARWOOD
3  Regional Director
   ELEANOR DURHAM, MD Bar
4  NADINE S. SAMTER, WA Bar # 23881
5  Email: edurham@ftc.gov/nsamter@ftc.gov
   Federal Trade Commission
6  915 2nd Ave., Suite 2896, Seattle, WA 98174
7  (206) 220-4476 (Durham)/(206) 220-6366 (fax)
8  MARICELA SEGURA, CA Bar #225999
   Email: msegura@ftc.gov
9  10990 Wilshire Blvd., Los Angeles, CA 90024
10 (310) 824-4343/(310) 824-4330 (fax)

ORIGINAL

11            **UNITED STATES DISTRICT COURT**
12            **CENTRAL DISTRICT OF CALIFORNIA**

13 ─────────────────────────

14 FEDERAL TRADE COMMISSION,          Civ. No. CV17-07048 SJO (KS)

15                Plaintiff,          **MEMORANDUM OF POINTS AND**
                                      **AUTHORITIES IN SUPPORT OF**
16                                    **PLAINTIFF'S *EX PARTE***
                                      **APPLICATION FOR TEMPORARY**
17              vs.                   **RESTRAINING ORDER, ASSET**
                                      **FREEZE, APPOINTMENT OF A**
18                                    **TEMPORARY RECEIVER,**
   ALLIANCE DOCUMENT               **IMMEDIATE ACCESS, LIMITED**
19 PREPARATION, LLC, also dba EZ     **EXPEDITED DISCOVERY, AND**
   Doc Preps, Grads Aid, and First   **OTHER EQUITABLE RELIEF,**
20 Document Aid; SBS CAPITAL         **AND ORDER TO SHOW CAUSE**
                                      **WHY PRELIMINARY**
21 GROUP, INC., also dba Grads United **INJUNCTION SHOULD NOT**
   Discharge; SBB HOLDINGS, LLC, also **ISSUE**
22 dba EZ Doc Preps, Allied Doc Prep, and
23 Post Grad Services; FIRST STUDENT  **FILED UNDER SEAL**
24 AID, LLC; UNITED LEGAL CENTER,
   LLC, also dba Post Grad Aid, Alumni
25 Aid Assistance, and United Legal
26 Discharge; UNITED LEGAL CENTER,
27 INC., also dba United Legal Discharge;
28 ELITE CONSULTING SERVICE,

MEMORANDUM OF POINTS AND AUTHORITIES          Federal Trade Commission
IN SUPPORT OF TRO                                915 2nd Ave., Ste. 2896
                                              Seattle, Washington 98174
                                                      (206) 220-6350

1   LLC, fka FIRST GRAD AID, LLC, also
    dba First Grad Aid and; GRADS DOC
2   PREP, LLC, also dba Academic Aid
3   Center, Academic Protection, Academy
    Doc Prep, and Academic Discharge;
4   ELITE DOC PREP, LLC, also dba
5   Premier Student Aid; BENJAMIN
    NADERI aka Benjamin Pournaderi and
6   Benjamin Brooks; SHAWN GABBAIE
7   aka Shawn Goodman; AVINADAV
8   RUBENI aka Avi Rubeni; MICHAEL
    RATLIFF; RAMIAR REUVENI aka
9   Rami Reuveni; and FARZAN
10  AZINKHAN,

11              Defendants, and
12
13  DIRECT CONSULTING SERVICE,
    LLC; and CAPITAL DOC PREP, INC.,
14
15              Relief Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1
2

**Table of Contents**

I.   INTRODUCTION.......................................................................... 1

II.  DEFENDANTS............................................................................ 3

A.   Corporate Defendants ............................................................. 3

B.   Individual Defendants ............................................................. 5

C.   Relief Defendants.................................................................... 7

III. DEFENDANTS' DECEPTIVE BUSINESS PRACTICES................ 8

A.   Federal Student Loan Programs................................................ 8

B.   Defendants' False and Unsubstantiated Student Loan Debt Relief
     Representations ....................................................................... 9

IV.  A TEMPORARY RESTRAINING ORDER SHOULD ISSUE AGAINST
     THE DEFENDANTS............................................................... 18

A.   This Court Has the Authority to Grant the Requested Relief......... 18

B.   The FTC Meets the Standard for Granting A Government Agency's Request
     for Preliminary Injunctive Relief .............................................. 19

     1.   The FTC Has Demonstrated It Is Likely to Succeed on the Merits ........... 20

     2.   The Equities Weigh in Favor of Granting Injunctive Relief...................... 23

C.   Defendants are a Common Enterprise and Jointly and Severally Liable for
     the Law Violations ................................................................. 24

D.   The Individual Defendants are Liable for Injunctive and Monetary Relief.. 25

E.   An Asset Freeze is Necessary to Preserve the Court's Ability to Fashion
     Meaningful Relief .................................................................. 27

F.   A Temporary Receiver is Needed to Determine the Scope of Injury, Locate
     and Preserve Business Assets and Records, and Protect Consumers' Personal
     Financial Records .................................................................. 30

G.   Immediate Access and Limited Expedited Discovery are Necessary ........... 31

H.   The *Ex Parte* TRO Should Issue Without Notice............................ 31

V.   CONCLUSION ......................................................................... 32

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - i

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

# Table of Authorities

## Cases

*Commodity Futures Trading Comm'n v. British Am. Commodity Options Corp.*, 560 F.2d 135 (2d Cir. 1977) ............................................................... 25

*Delaware Watch Co. v. FTC*, 332 F.2d 745 (2d Cir. 1964) ................................ 26

*Flynt Distrib. Co., Inc., v. Harvey*, 734 F.2d 1389 (9th Cir. 1984) ..................... 21

*FTC and State of Florida v. Consumer Assistance, LLC*, 16-cv-21528 FAM (S.D. Fla. Final Order  1/12/17) ................................................................................. 1

*FTC and State of Florida v. Student Aid Center, Inc.*, 16-cv-21843 FAM (S.D. Fla. Final Order entered 8/31/17) ........................................................................ 1

*FTC v. Advanced Mgmt. Servs. NW, LLC*, CV-10-148-LR (E.D. Wash. May 10, 2010) ............................................................................................................... 33

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) ................... passim

*FTC v. Amy Travel Servs., Inc.*, 875 F.2d 564 (7th Cir. 1989 ................... 28, 29, 30

*FTC v. Beatrice Foods Co.*, 587 F.2d 1225 (D.C. Cir. 1978) ............................... 20

*FTC v. Consumer Health Benefits Association*, 2011 WL 3652248 (E.D. N.Y. Aug. 18, 2011) ......................................................................................................... 26

*FTC v. Cyberspace.com, LLC*, 453 F.3d 1196 (9th Cir. 2006) .................. 21, 23, 29

*FTC v. Devry Education Group, Inc.*, CV 16-00579 MWF-SS (C.D. Cal. Dec. 15, 2016) ................................................................................................................. 2

*FTC v. Direct Benefits Group, LLC*, 2013 WL 3771322 (M.D. Fla. July 18, 2013). ........................................................................................................................ 26

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) ....................................... 23

*FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) ................. 22, 25

*FTC v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996) ................................... 19

*FTC v. Gill*, 265 F.3d. 944 (9th Cir. 2001) ......................................................... 21

*FTC v. Gill*, 71 F. Supp. 2d 1030 (C.D. Cal. 1999) ....................................... 21, 23

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - ii

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

*FTC v. Good EBusiness, LLC, et al.*, CV16-1048 ODW (JPRx) (C.D. Cal. Final Order entered 7/12/16) ................................................................................... 1

*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982) ........................... 18, 19, 30

*FTC v. Johnson*, 96 F. Supp. 3d 1110 (D. Nev. Mar. 31, 2015) ............................. 23

*FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088 (S.D.N.Y. 1977) ................... 20

*FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127 (9th Cir. 2010) ................. 28, 29

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) .............................. 19, 21, 22

*FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) .............. 28, 29

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ...................................... 19, 21, 28

*FTC v. Strategic Student Solutions, LLC*, 17-cv-80619 WPD (S.D. Fla. TRO entered 5/15/17) ........................................................................................... 1

*FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993 (N.D. Ind. 2000) .............. 26

*FTC v. Thompson Medical Co.*, 104 F.T.C. 648 (1984) ....................................... 22

*FTC v. Thomsen-King & Co.*, 109 F.2d 516 (7th Cir. 1940) ................................ 25

*FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984) ........................ 19, 33

*FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156 (9th Cir. 1984) ...................... 20, 24

*FTC v. Wealth Educations, Inc.*, CVC12-02357 SJO (JEMx) (C.D. Ca. Apr. 6, 2015) ....................................................................................................... 30

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989) ................... passim

*FTC v. Wyndham Worldwide Corp.*, 2014 WL 2812049 (D. N.J. June 23, 2014) . 26

*Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423 (1974) .............................. 35

*Heideman v. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003) ............................... 21

*In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984) ............................................ 21

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) .......................................... 30

*Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679 (1978) ...................... 25

*Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S. Ct. 1086 (1946) .................... 34

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) .............. 35

*Resort CarRental Sys., Inc. v. FTC*, 518 F.2d 962 (9th Cir. 1975) ................... 22, 23

Federal Trade Commission
915 2ⁿᵈ Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

*SEC v. First Fin. Grp. of Texas,* 645 F.2d 429 (5th Cir. 1981) .............................. 33

*SEC v. Keller Corp.,* 323 F.2d 397 (7th Cir. 1963)................................................... 33

*SEC v. Manor Nursing Ctrs., Inc.,* 458 F.2d 1082 (2d Cir. 1972).................... 30, 32

*SEC v. R.J. Allen & Associates, Inc.,* 386 F. Supp. 866 (S.D. Fla. Nov. 29, 1974) 30

*Sunshine Art Studios, Inc. v. FTC,* 481 F.2d 1171 (1st Cir. 1973) ......................... 26

*United States v. Diapulse Corp. of Am.,* 457 F.2d 25 (2d Cir. 1972) ..................... 24

*United States v. Ellis Research Laboratories, Inc.,* 300 F.2d 550 (7th Cir. 1962) . 25

*United States v. Laerdal Mfg. Corp.,* 73 F.3d 852 (9th Cir. 1995) ......................... 19

## Statutes

Federal Trade Commission Act, 15 U.S.C. § 45.................................................... 3

Federal Trade Commission Act, 15 U.S.C. § 53.................................................. 18

## Rules

16 C.F.R. § 310.3(a)(2)(vii), (x)........................................................................ 22

16 C.F.R. § 310.4(a)(5)(i)................................................................................... 22

16 C.F.R. ¶310.2(o) ........................................................................................... 22

16 C.F.R. Part 310 ............................................................................................... 2

Fed. R. Civ. P. 26(d), 30(a)(2), 33(a), and 34(b) ............................................. 31

Fed. R. Civ. P. 65(b).......................................................................................... 31

L.R. 7-19.2.......................................................................................................... 31

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - iv

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

## I.   INTRODUCTION

The Federal Trade Commission asks this Court to halt Defendants' deceptive nationwide student loan debt relief operation.  Exploiting widespread consumer anxiety about student loan debt, Defendants deceive consumers into paying them as much as $1000 dollars to enroll in programs Defendants claim will provide consumers with much-needed debt relief, with the emphasis on loan forgiveness and loan discharge.  In this way, Defendants have defrauded financially-strapped consumers out of at least $20 million since mid-2015.

Student loan debt is the second largest class of consumer debt, with 42 million Americans collectively owing nearly $1.3 trillion.[1]  Unfortunately, this increase in student loan debt has been accompanied by a dramatic increase in debt relief schemes that take advantage of consumers struggling to pay their student loan debts.  Following the same model as deceptive mortgage or credit card debt relief operations, which proliferated during the economic downturn, student loan debt relief scams capitalize on consumers' financial distress and involve similar misrepresentations and illegal advance fees.  The FTC has brought a series of cases against operations like the one run by Defendants, but the problem persists.[2]

For many consumers, their student loan debt struggles have been made worse because of unlawful recruiting and lending practices by certain for-profit colleges.  Several recent high profile lawsuits against these colleges have highlighted this issue.[3] Defendants specifically target alumni of for-profit colleges,

---

[1] PX1 ¶ 24 at 40-41; Att. S at 105-08.
[2] *FTC v. Good EBusiness, LLC, et al.*, CV16-1048 ODW (JPRx) (C.D. Cal. Final Order entered 7/12/16); *FTC and State of Florida v. Consumer Assistance, LLC*, 16-cv-21528 FAM (S.D. Fla. Final Order  1/12/17); *FTC and State of Florida v. Student Aid Center, Inc.*, 16-cv-21843 FAM (S.D. Fla. Final Order entered 8/31/17); *FTC v. Strategic Student Solutions, LLC*, 17-cv-80619 WPD (S.D. Fla. TRO entered 5/15/17).
[3] *See, e.g., FTC v. Devry Education Group, Inc.*, CV 16-00579 MWF-SS (C.D. Cal. Dec. 15, 2016).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 1

1    promising to enroll them in a program that will eliminate or reduce their student

2    loan burden.  However, the only programs available to federal student loan

3    borrowers to help them manage their indebtedness are offered free of charge

4    through the Department of Education ("ED").  Consumers can only enroll in ED

5    programs through their loan servicers or the ED.  Moreover, the programs

6    Defendants describe to consumers often do not correspond to any ED program or

7    are not available to consumers through the ED on the terms Defendants describe.

8    Defendants misrepresent the programs into which they are offering to enroll

9    consumers to trick them into paying exorbitant fees for their service, which

10   involves, if actually performed, nothing more than completing application forms to

11   enroll consumers in ED programs that are freely accessible online.

12        Along with this Memorandum, the FTC submits overwhelming evidence of

13   Defendants' deceptive practices.  This evidence includes, among other things:

14   transcripts of five undercover calls by government investigators that capture

15   numerous misrepresentations by Defendants; declarations from 29 consumers

16   victimized by Defendants; a declaration from an authorized federal student loan

17   servicer that has received hundreds of complaints about Defendants; and a

18   summary of 245 consumer complaints received by the BBB or a government

19   agency.

20        Defendants' practices violate Section 5 of the Federal Trade Commission

21   Act ("FTC Act"), 15 U.S.C. § 45, which prohibits deceptive trade practices, and

22   the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, which prohibits taking

23   advance fees for and the deceptive marketing of student debt relief services.  To

24   protect consumers from additional harm and preserve the Court's ability to provide

25   effective final relief, the FTC seeks an *ex parte* temporary restraining order

26   ("TRO") to immediately halt Defendants' deceptive practices, preserve

27   Defendants' assets, and appoint a temporary receiver.

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO  - 2

## II.   DEFENDANTS

There are nine Corporate Defendants, six Individual Defendants, and two Relief Defendants.  The Corporate Defendants operate as a common enterprise.[4]

### A.    Corporate Defendants

**Alliance Document Preparation, LLC ("Alliance")**, is a California limited liability company created in April 2015.[5]  Alliance has done business as EZ Doc Preps, First Document Aid, and Grads Aid.[6]  Alliance has used multiple Los Angeles addresses, including 9060 and 9056 Santa Monica Blvd.,[7] and has its phone room and offices located at 1435 S. La Cienega Blvd., Los Angeles.[8]

**First Student Aid, LLC ("FSA")**, is a California limited liability company created on August 14, 2015.[9]  FSA does business under its own name and has typically done business in conjunction with EZ Doc Preps.[10]  FSA has used the Los Angeles address at 9056 Santa Monica Blvd,[11] and has its telephone sales operation at the 1435 S. La Cienega Blvd. location.[12]

**SBB Holdings, LLC ("SBB")**, is a California limited liability company created on November 23, 2015.[13]  SBB has done business as Post Grad Services, Allied Doc Prep, and EZ Doc Preps.[14]  SBB has used the Los Angeles addresses

---

[4] *See*, Section III.C, *infra*.
[5] PX1 ¶ 7.a at 34, Att. C at 56.
[6] *Id.* ¶¶ 5-6 at 33-34, Atts. A-B at 54-55; PX 26 ¶ 3 at 837, Att. A at 840.
[7] *Id.* ¶ 6.c at 34, Att. B at 55; ¶ 46 at 47, Att. FF at 272.
[8] *Id.* ¶ 34 at 43, Att. W at 138-140.
[9] *Id.* ¶ 8.a at 35, Att. D at 57.
[10] *See, e.g.*, PX 22 ¶ 2 at 783, ¶ 4 at 784, Att. A at 788.
[11] *Id.* ¶ 8.c at 35, Att. D at 57.
[12] *Id.* ¶¶ 33-34 at 43, Att. W at 138-40.
[13] *Id.* ¶ 14.a at 37, Att. J at 66.
[14] *Id.* ¶ 13.e at 37, Att. I at 65; ¶¶ 35-36 at 43, Att. W at 138-40; ¶ 38.a at 44, Att. X at 144.

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

9056 Santa Monica Blvd., and P.O. Boxes 691004 and 351054.[15]  SBB maintains its offices and sales operation at 1435 S. La Cienega Blvd.[16]

**United Legal Center, LLC ("ULC")**, is a Nevada limited liability corporation created on August 21, 2015,[17] and has done business as Post Grad Aid, Alumni Aid Assistance, and United Legal Discharge.[18]  **United Legal Center, Inc. ("ULC, Inc.")**, a California corporation created on February 8, 2017, succeeded ULC and lists its address as 153 S. Palm Dr., Suite 1, Beverly Hills.[19]  Consumer complaints have associated the Los Angeles addresses 1999 Ave. of the Stars #1100 and 8564 W. Pico with Alumni Aid Assistance.[20]  ULC and ULC, Inc. have their offices and telephone sales room located at 1435 S. La Cienega Blvd.[21]

**Elite Consulting Services, LLC ("ECS")**, is a California limited liability company created on November 17, 2015, as First Grad Aid, LLC.[22]  On January 17, 2017, First Grad Aid's name was changed to ECS, which continues to do business under the name First Grad Aid.[23]  ECS/FGA has used the address 1875 Century Park E. Ste., 700, Los Angeles, and operates from the phone room at 1435 S. La Cienega Blvd.[24]

**Elite Doc Prep, LLC ("Elite")**, is a California limited liability company created on December 15, 2015,[25] and has done business as Premier Student Aid.[26]

---

[15] *Id.* ¶ 13.c at 37, Att. I at 64.
[16] *Id.* ¶¶ 32-36 at 43, Att. W at 138-40; ¶ 60.a at 52.
[17] *Id.* ¶ 9.a at 35, Att. E at 59.
[18] *Id.* ¶ 33 at 43, Att. W at 138-40; ¶41.e at 46, Att. AA at 254.
[19] *Id.* ¶ 18 at 38, Att. N at 70.
[20] *Id.* ¶ 60.b and c at 52.
[21] *Id.* ¶ 34 at 43, Att. W at 138-40; ¶ 41.d at 45, Att. AA at 252; ¶ 60.a at 52.
[22] *Id.* ¶ 12.a at 36, Att. H at 63.
[23] *Id.* ¶ 17.a at 38, Att. M at 69.
[24] *Id.* ¶ 19.c at 39, Att. O at 71; ¶¶ 33-34 at 43, Att. W at 138-40.
[25] *Id.* ¶ 15.a at 37, Att. K at 67.
[26] *Id.* ¶ 33 at 43, Att. W at 138-40; ¶ 60.a at 52.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO  - 4

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1  Elite has listed its address as 125 La Peer Dr., 9060 Santa Monica Blvd, and it also

2  uses the phone room located at 1435 S. La Cienega Blvd.[27]

3      **Grads Doc Prep, LLC ("GDP")**, is a California limited liability company

4  created on August 31, 2016.[28]  GDP has done business as Academic Aid Center,

5  Academy Doc Prep, and Academic Discharge.[29]  GDP has listed its address as

6  1467 S. Holt Ave. #5, 8564 W. Pico Blvd., and 1999 Ave. of the Stars #1100, all in

7  Los Angeles.[30]  The phone numbers associated with the dbas GDP used, however,

8  belong to the telephone account in the name of defendant Gabbaie.[31]

9      **SBS Capital Group, Inc. ("SBS")**, is a California corporation created on

10  March 20, 2017, and lists its address as 1575 Westwood Blvd., Suite 303, Los

11  Angeles.[32]  This is also an address associated with the name "Grads United

12  Discharge" in consumer complaints.[33]  The telephone numbers associated with

13  Grads United Discharge belong to the telephone account in the name of Shawn

14  Gabbaie.[34]

15      **B.    Individual Defendants**

16      **Benjamin Naderi ("Naderi")** is the sole owner of Alliance, Direct, SBS,

17  and Capital, and co-owner of FSA and SBB.[35]  Naderi is responsible for the

18  telephone account Defendants use to market their services under the names EZ

19

20  _____

21  [27] *Id.* ¶ 15.c at 37, Att. K at 67; ¶¶ 33-34 at 43, Att. W at 138-40; ¶ 60.a at 52.
   [28] *Id.* ¶ 16.a at 38, Att. L at 68.

22  [29] *Id.* ¶ 33 at 43, Att. W at 138-40; ¶ 60.a at 52.

23  [30] *Id.* ¶ 16.c at 38, Att. L at 68; ¶ 60.a at 52.
   [31] *Id.* ¶ 36 at 43.

24  [32] *Id.* ¶ 20 at 39, Att. P at 72.

25  [33] *Id.* ¶ 31.a at 42, Att. V at 133.
   [34] *Id.* ¶ 36 at 43.

26  [35] *Id.* ¶ 7 at 34, Att. C at 56-57 (in name of Benjamin Pournaderi); ¶ 10 at 35, Att. F at

27  61; ¶ 20 at 39, Att. P at 72-73; ¶ 21 at 39, Att. Q at 74-75; ¶ 8 at 35, Att. D at 58;

28  ¶ 14 at 37, Att. J at 66; ¶ 38 at 44; Att. X at 163.

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1  Doc Preps, Grads Aid, First Document Aid, First Student Aid, United Legal

2  Center, Post Grad Aid, Alumni Aid Assistance, United Legal Discharge, Academic

3  Aid Center, Academy Doc Preps, Academic Discharge, First Grad Aid, Elite Doc

4  Prep, and Premier Student Aid.[36]  Naderi registered the Internet domain names

5  ezdocpreps.com, gradsaid.com, firstdocumentaid.com, firststudentaid.com, and

6  capitaldocprep.com, and he is the signatory on merchant and depository bank

7  accounts in the names of Alliance, EZ Doc Preps, Capital, and Direct.[37]

8  **Shawn Gabbaie ("Gabbaie")** co-owns SBB and FSA with Naderi.[38]

9  Gabbaie is responsible for the telephone account Defendants use to market their

10  services under the names Allied Doc Prep, Post Grad Services, and Grads United

11  Discharge.[39]  Gabbaie registered the Internet domain names allieddocprep.com,

12  and postgradservices.com,[40] and is the signatory on merchant and depository bank

13  accounts in the name of SBB Holdings, including a merchant account in the name

14  of EZ Doc Preps.[41]

15  **Avinadav Rubeni ("Rubeni")** owns ULC and ULC, Inc.[42]  Rubeni is also

16  responsible, along with Naderi, for the telephone account Defendants used to

17  market their services and he is the signatory on merchant and bank accounts in the

18  name of United Legal Center.[43]

19

20

21  [36] *Id.* ¶ 33 at 43, Att. W at 138-40.

22  [37] *Id.* ¶ 22.d at 40, Att. R at 84-85; ¶ 39 at 45, Att. Y at 183; ¶ 42 at 46, Att. BB at

23  258; ¶ 44 at 47, Att. DD at 266-68; ¶ 45 at 47, Att. EE at 269-70.

23  [38] *Id.* ¶ 8 at 35; ¶ 14 at 37, Att. J at 66; ¶ 38 at 44; Att. X at 163.

24  [39] *Id.* ¶¶ 35-36 at 43, Att. W at 138-40.

25  [40] *Id.* ¶ 22.c at 40, Att. R at 80-83 (registered as Shawn Goodman).

26  [41] *Id.* ¶ 38 at 44, Att. X at 144; ¶ 43 at 46, Att. CC at 263-64.

26  [42] *Id.* ¶ 9.b at 35, Att. E at 59-60; ¶ 18.b at 38, Att. N at 70.

27  [43] *Id.* ¶¶ 32-34 at 43, Att. W at 138-40; ¶ 41 at 45, Att. AA245-56; ¶¶ 55-59 at 51-

28  52, Atts. OO-SS at 344-52.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 6

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

**Ramiar Reuveni ("Reuveni")** owns GDP.[44]  Reuveni pays for the domain name registrations for academicaidcenter.com, academicprotection.com, academicdischarge.com, alumniaidassociation.org, unitedlegalcenter.com, unitedlegaldischarge.com, and gradsuniteddischarge.com, and is a signatory to bank accounts in the name of GDP.[45]

**Farzan Azinkhan ("Azinkhan")** owns Elite.[46]  Azinkhan is the domain registrant for elitedocprep.com and premierstudentaid.com.[47]

**Michael Ratliff ("Ratliff")** owns ECS formerly known as FGA.[48]  Ratliff is the domain registrant for eliteconsultingservice.com and firstgradaid.com and is a signatory to the bank account for ECS.[49]

### C.   Relief Defendants

**Direct Consulting Services, LLC ("Direct")**, is a California limited liability company created on September 29, 2015, and uses the address 9056 Santa Monica Blvd., in Los Angeles.[50]  Capital Doc Prep, Inc. ("CDP"), is a California corporation created on March 20, 2017, and lists it address as 369 S. Doheny Rd., #1124, Beverly Hills.[51]  Naderi owns both companies.[52]  Bank accounts for both companies reflect payments received from one or more of the Corporate

---

[44] *Id.* ¶ 16 at 38, Att. L at 68.
[45] *Id.* ¶ 23 at 40; ¶ 54 at 50-51, Att. NN at 342-43.
[46] *Id.* ¶ 15 at 37, Att. K at 67.
[47] *Id.* ¶ 22.b at 40, Att. R at 76-79.  Plaintiff was not able to obtain banking records for Elite, but Elite did maintain a bank account.  PX37 ¶¶ 10, 15, 17 at 1379-80.
[48] PX1 ¶ 12 at 36, Att. H at 63; ¶ 17 at 38, Att. M at 69.
[49] *Id.* ¶ 22.a at 39, Att. R at 93-94; ¶ 53 at 50, Att. MM at 323-37.
[50] *Id.* ¶ 10 at 35, Att. F at 61.
[51] *Id.* ¶ 21 at 39, Att. Q at 74-75.
[52] *Id.* ¶ 10 at 35, Att. F at 61; ¶ 21 at 39, Att. Q at 74-75.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 7

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

Defendants that are traceable to Defendants' deceptive practices[53] and to which the Relief Defendants have no legitimate claim.

## III.   DEFENDANTS' DECEPTIVE BUSINESS PRACTICES

### A.   Federal Student Loan Programs

To address the high level of distressed student loan debt, the ED administers a limited number of student loan forgiveness and discharge programs.[54]  All of the programs have strict eligibility requirements that limit their availability to the majority of borrowers.  For example, the Public Service Loan Forgiveness ("PSLF") program applies only to employees of governmental units or non-profit organizations and provides loan forgiveness after 10 years of timely monthly payments.[55]  Another program, the Borrower Defense to Repayment ("BDR") program, may provide loan discharge to some students who attended colleges that violated the law with respect to their student loan programs.  The ED, however, has not yet adopted regulations establishing criteria for processing or evaluating BDR applications.[56]  As a result, it is very difficult even for experts in the area to know who qualifies for BDR.[57]  The ED also offers income-driven repayment ("IDR") programs, which are designed to provide affordable payments for low-income borrowers.[58]  Under the IDR programs, if a borrower's income remains low throughout the loan term, it is possible that the unpaid balance of the loan will be forgiven after 20 or 25 years, but the forgiven amount will likely be imputed as

---

[53] PX37 ¶¶ 12, 14, 17 at 1380.

[54] PX31 ¶¶ 4-7 at 916-18.  The ED loan discharge programs offer complete elimination of indebtedness if the borrower meets certain criteria.  The ED loan forgiveness programs eliminate a portion of the debt after the borrower makes payments for some time period.

[55] *Id.* ¶ 7 at 918.

[56] *Id.* ¶¶ 4-5 at 916-17.

[57] *Id.* ¶ 4 at 916.

[58] *Id.* ¶ 8 at 918-19.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 8

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1    income to the borrower for tax purposes.[59]  For most, however, IDR is not a

2    forgiveness program and no one has yet received loan forgiveness under any of the

3    IDR programs.[60]  Federal student loan borrowers can apply for any forgiveness or

4    repayment plan available to them through their student loan servicers at no cost.[61]

5    Application to these programs does not require the assistance of a third-party

6    company to enroll or payment of application fees.[62]

7         **B.    Defendants' False and Unsubstantiated Student Loan Debt Relief**

8              **Representations**

9         Defendants make false and deceptive claims to consumers that: 1) they are

10   part of, affiliated with, or work directly with the government, government loan

11   programs, the ED, or consumers' loan servicers; 2) consumers who purchase

12   Defendants' debt relief services generally will have their monthly payments

13   reduced or their loan balances forgiven in whole or in part; and 3) consumers are

14   qualified for, or are approved to receive, loan forgiveness or other programs that

15   will permanently lower or eliminate their loan payments or balances.  Defendants

16   market their services via email, telephone, and social media platforms such as

17   Facebook, targeting former students of for-profit colleges sued by class action

18   litigants or government agencies, such as University of Phoenix, DeVry

19   University, ITT Tech, and the Art Institutes.[63]

20        A typical Facebook advertisement states:

21             **Art Institutes Loan Forgiveness.**

22             Call (844) 478-8487 to see if you qualify

23

_____

24   [59] *Id.*

25   [60] *Id.*

26   [61] *Id.* ¶ 3 at 915-16.

     [62] *Id.*

27   [63] All but one of the consumers whose declarations are attached as PX 2 through

28   PX30 to this Memorandum attended for-profit colleges.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO  - 9

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

for loan forgiveness due to the recent

lawsuit against The Art Institutes.[64]

One consumer recently received an email from Defendants stating:

> My name is Eyal Cohen and I am the Federal
> Student Loan Discharge Specialist here at United
> Legal Discharge.  We are an organization. . . .here to
> assist and service as many students as possible
> regarding discharging their federal student loans.  Chances
> are the reason you are receiving this email is because
> you have attended a for profit institution. . . .that [has]
> been guilty for certain malpractices and [has]
> consistently preyed on students. . . .you can
> potentially be eligible to file for a Cause of Action
> Grievance Discharge. . . .[C]ontact me as soon as
> possible to check your eligibility and for us
> to review your case in detail in determining
> if we could provide this service to you.[65]

When consumers call to inquire about the advertised loan forgiveness or discharge, Defendants tell consumers that they are eligible for or have been qualified or approved for loan forgiveness, discharge, or other debt relief.[66]  As

---

[64] PX15 ¶ 3 at 675, Att. A at 679; *see, also,* PX8 Att. D at 551-55; PX29 ¶ 3 at 891, Att. A at 895.

[65] PX4.1 ¶ 2 at 431, Att. A at 434-35.

[66] PX2 ¶ 5 at 369; PX3 ¶ 5 at 384; PX 4 ¶ 2 at 402; PX5 ¶¶ 4-5 at 445; PX 6 ¶ 4 at 470; PX8 ¶ 3 at 524; PX9 ¶¶ 3-4 at 556-57; PX10 ¶ 2 at 572; PX11 ¶ 3 at 590; PX12 ¶ 3 at 622; PX14 ¶ 3 at 662; PX15 ¶ 3 at 675; PX 16 ¶ 3 at 691; PX 17 ¶ 4 at 710-11; PX19 ¶ 3 at 730; PX20 ¶ 3 at 753; PX21 ¶ 3 at 761; PX22 ¶ 3 at 783-84; PX23 ¶¶ 3-4 at 799-800; PX24 ¶ 3 at 813-14; PX25 ¶ 3 at 823-24; PX26 ¶ 3 at 837-38; PX27 ¶ 3 at 858-59; PX28 ¶ 4 at 876-77; PX29 ¶ 4 at 891-92; *see, also,* PX32 lns. 12-16 at 1259,

---

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 10

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1   evidenced by the above-quoted email, Defendants often state that "we" provide

2   this service or program, or state or imply that they provide the promised debt

3   relief.[67]  Testimony from 29 consumers, corroborated by 249 consumer complaints

4   filed with the FTC,[68] 113 consumer complaints obtained from an authorized ED

5   loan servicer,[69] and five recorded undercover sales calls,[70] consistently show that

6   Defendants tell consumers that they will enroll consumers in programs providing

7   one or more of the following:

8   • loan forgiveness;[71]

9   • loan discharge;[72]

10

---

11   lns. 2-4 at 1263; PX33 lns. 8-18 at 1273, lns. 23-11 at 1276-77; PX34  lns. 13-14 at
12   1311; PX35 lns. 3-6 at 1344; PX36 lns. 4-3 at 1364-65.
     [67] PX2 ¶ 4 at 369; PX3 ¶ 5 at 384; PX 4 ¶ 4 at 403; PX7 ¶ 7 at 488; PX8 ¶¶ 3-4 at 524-
13   25; PX10 ¶¶ 2-3 at 572-73; PX11 ¶ 3 at 590-91; PX12 ¶ 3 at 622; PX14 ¶ 3 at 662;
     PX15 ¶ 3 at 675; PX 17 ¶ 4 at 709-10; PX18 ¶¶ 4-5 at 716-17; PX20 ¶ 3 at 753; PX22
14   ¶¶ 2-3 at 783-84; PX23 ¶ 3 at 799; PX24 ¶¶ 2-3 at 813; PX25 ¶ 3 at 823-24; PX26 ¶ 3
15   at 837; PX27 ¶ 4 at 859; PX28 ¶ 3 at 876; PX29 ¶ 5 at 892; *see, also,* PX32 lns. 5-6 at
     1252, lns. 2-4 at 1263; PX33 lns. 1-17 at 1288; PX34 lns. 6-14 at 1314, lns .1-4 at
16   1320; PX35 lns. 25-20 at 1339-40; PX36  lns. 9-13 at 1360.
     [68] PX1 ¶ 31 at 42, Att. U at 111-29.
17   [69] PX31 ¶¶ 21-23 at 931-32, Att. A at 935-1247.
18   [70] Transcripts of recorded undercover calls are attached as PX 32-36 at 1248-1376.
     *See, also,* PX 31 ¶¶ 13-20 at 920-31 (Defendants also made numerous false statements
19   in the sales calls in addition to those alleged in the FTC complaint. For example, one
20   sales representative admitted, when asked, that the caller could prepare the forms for
     himself, but lied about the difficulty of the paperwork and the problems that the caller
21   would face if he applied on his own. *See* PX32 lns. 17-25 at 1261-62.
22   [71] PX2 ¶¶ 3-4 at 368-69; PX3 ¶ 5 at 384; PX4 ¶ 2 at 402; PX5 ¶ 5 at 445; PX6 ¶ 4 at
     470; PX7 ¶ 8 at 488; PX8 ¶ 3 at 524-25; PX9 ¶¶ 3-4 at 556-57; PX10 ¶ 3 at 572;
23   PX11 ¶ 3 at 590-91; PX12 ¶ 7 at 624; PX13 ¶ 4 at 644; PX14 ¶ 3 at 662; PX15 ¶ 3 at
24   675-76; PX16 ¶ 3 at 691; PX17 ¶ 4 at 709-10; PX18 ¶ 4 at 716-17; PX19 ¶ 3 at 730-
     31; PX21 ¶ 3 at 761-62; PX22 ¶ 3 at 783-84; PX23 ¶ 3 at 799; PX24 ¶ 3 at 813-14;
25   PX25 ¶ 3 at 823-24; PX26 ¶ 4 at 838; PX27 ¶ 4 at 859; PX28 ¶¶ 4-5 at 876-77; PX30
26   ¶ 3 at 913-14; *see, also,* PX32 lns. 5-6 at 1252; PX34 lns. 10-12 at 1321; PX 35 lns. 8-
     20 at 1337; PX36 lns. 1-19 at 1365.
27

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 11

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

- reduced, often permanently reduced, monthly payments; [73] and
- reduced or eliminated interest. [74]

In some instances, to persuade consumers to pay an enrollment fee of $400 to $1000, Defendants' claim to work directly with the ED, or that the ED or the government has certified them or authorized them to provide their services. [75]

Once consumers agree to sign up for Defendants' services and have provided credit or debit card information, Defendants then email consumers several pages of documents, the first page of which is misleadingly headed "New Account Application," and which includes a binding contract. [76] Consumers are required to e-sign the documents while consumers are still on the phone. [77] The

---

[72] PX4.1 Atts. A-B at 432-443; PX7 Att. D at 519-21; PX12 ¶¶ 7-9 at 624-25, Att. C at 637-40; PX21 ¶ 11 at 765.

[73] PX2 ¶¶ 3-4 at 368-69; PX4 ¶ 2 at 402; PX5 ¶ 5 at 445; PX6 ¶ 5 at 470; PX8 ¶ 3 at 524; PX10 ¶ 3 at 572-73; PX11 ¶ 3 at 590-91; PX12 ¶ 3 at 622; PX14 ¶ 3 at 662; PX16 ¶ 3 at 691; PX17 ¶ 4 at 709-10; PX18 ¶ 4 at 716-17; PX19 ¶ 3 at 730-31; PX21 ¶ 3 at 761-62; PX26 ¶ 4 at 838; PX28 ¶ 4 at 876-77; PX29 ¶ 5 at 892; PX30 ¶ 3 at 913-14; see, also, PX33 lns. 1-13 at 1288; PX34 lns. 5-4 at 1315-16; PX35 lns. 8-20 at 1337; PX36 lns. 11-21 at 1374.

[74] PX2 ¶ 3 at 368; PX4 ¶ 2 at 402; PX6 ¶ 5 at 470; PX7 ¶ 4 at 487; PX11 ¶ 3 at 590-91; PX14 ¶ 3 at 662; PX16 ¶ 3 at 691; PX18 ¶ 4 at 716-17; PX32 lns. 2-8 at 1262; PX34 lns 8-13 at 1317; PX 35 lns. 10-17 at 1340; p. 18 , lns. 17-18 at 1346; lns. 21-25 at 1350.

[75] PX7 ¶ 4 at 487; PX9 ¶ 3 at 556-57; PX13 ¶ 4 at 644; PX18 ¶ 5 at 717; PX19 ¶ 3 at 730-31; PX20 ¶ 3 at 753; PX25 ¶ 3 at 823-24; PX26 ¶ 3 at 837-38; PX28 ¶ 3 at 876; PX29 ¶ 4 at 892; see, also, PX32 lns. 11-14 at 1254, lns. 6-12 at 1255, lns. 9-11 at 1264; PX34 lns. 1-8 at 1319; PX36 lns. 20-5 at 1364-65.

[76] See, e.g., PX 2, Att. A at 373-82.

[77] PX2 ¶ 6 at 369-70; PX3 ¶ 7 at 385; PX4 ¶ 3 at 402-03; PX5 ¶ 6 at 445-46; PX6 ¶ 7 at 471(signed on mobile phone); PX7 ¶ 4 at 487; PX8 ¶ 4 at 525; PX9 ¶ 6 at 558; PX10 ¶ 4 at 573; PX11 ¶ 4 at 591; PX12 ¶ 4 at 623; PX13 ¶ 4 at 644; PX14 ¶ 4 at 662-63; PX15 ¶ 4 at 676; PX16 ¶ 4 at 692; PX17 ¶ 5 at 710; PX18 ¶ 6 at 717-18; PX19 ¶ 6 at 731-32(signed on mobile phone); PX21 ¶ 7 at 763 (signed on mobile phone); PX22 ¶ 4 at 784; PX23 ¶ 6 at 800; PX24 ¶ 3 at 813-14; PX26 ¶ 3 at 837-38; PX27 ¶ 5 at 859; PX28 ¶ 5 at 877; PX29 ¶ 6 at 892; PX30 ¶ 3 at 913.

---

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO  - 12

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1  first page of the documents is headed "New Account Application." Often
2  Defendants obtain consumers' signatures under false pretenses, telling them that
3  the documents are only authorization for payment of the fee, or authorization for
4  them to act on behalf of consumers with their lenders.[78]  Defendants also distract or
5  rush consumers during the signing process and, in some cases, claim that the
6  government funding or lawsuit settlement funds will not be available to consumers
7  if they do not agree to enroll immediately.[79]

8         Defendants often state or imply that the documents reflect what the sales
9  representative told consumers over the telephone,[80] when, in fact, they do not.  The
10  contracts contain provisions that contradict what Defendants tell consumers in the
11  sales calls and attempt to limit Defendants' obligations to merely completing forms
12  for ED programs on the consumer's behalf.[81]  In other words, Defendants tell
13  consumers one thing during the sales call, and then pressure them to sign without
14  reading a document that states something completely different.  As discussed
15  below, these belated and contradictory statements do not cure the oral

16
17
18
19
20
21

[78] PX 4 ¶ 3 at 403; PX10 ¶ 4 at 573; PX15 ¶ 4 at 676; PX16 ¶ 4 at 692; PX17 ¶ 5 at
710.
[79] PX2 ¶ 6 at 369-70; PX4 ¶ 3 at 402-02; PX5 ¶ 6 at 445-46; PX8 ¶ 4 at 525; PX9 ¶ 6
at 558; PX11 ¶ 4 at 591; PX12 ¶ 4 at 623; PX13 ¶ 4 at 644; PX14 ¶ 4 at 662-63; PX15
¶ 4 at 676; PX16 ¶ 4 at 692; PX17 ¶ 5 at 710; PX18 ¶ 6 at 717-18; PX19 ¶ 6 at 731-
32; PX23 ¶ 6 at 800; PX24 ¶ 3 at 813-14; PX26 ¶ 3 at 837-38; PX28 ¶ 5 at 877; PX29
¶ 6 at 892.
[80] PX3 ¶ 7 at 385; PX6 ¶ 7 at 471; PX7 ¶ 4 at 487; PX9 ¶ 6 558; PX14 ¶ 4 at 662-63;
PX25 ¶ 5 at 824-25; PX27 ¶ 5 at 859; PX29 ¶ 6 at 892.
[81] *See, e.g.,*  PX2 Att. A at 379.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 13

1    misrepresentations Defendants made just moments before.[82]   Defendants later use

2    the contracts to deny consumer refunds.[83]

3         Defendants' claims that they will enroll consumers in programs that will

4    provide the promised debt relief are false and unsubstantiated.  Defendants neither

5    provide nor enroll consumers in the programs that they describe.  First,

6    Defendants' claim to enroll consumers in programs that will provide loan

7    forgiveness.[84]  These claims are false.  Sometime they describe a program

8    providing loan forgiveness after 20 years.[85]  While individuals whose income

9    remains low throughout their working lives may have some part of their loan

10   forgiven after 20 or 25 years under IDR, IDR is a repayment plan not a forgiveness

11   program.[86]  Because loan forgiveness under IDR is entirely dependent on

12   consumers' income over the 20 or 25-year loan term, and Defendants cannot

13   predict the earnings of consumers over that time-period, Defendants therefore

14   cannot promise that any part of a consumer's loan will be forgiven.

15        In many instances, Defendants also falsely claim to enroll consumers in

16   programs providing loan forgiveness after some other term of months or years.[87]

17   The only loan forgiveness program that provides forgiveness of the remaining loan

18   balance after a term of years is the PSLF, and only employees of the government

19

20   _____

21   [82] Defendants' websites also contain statements contradicting the oral
     misrepresentations Defendants make during the sales pitch.  The websites, however,
22   are irrelevant to the scheme, as consumers rarely, if ever, see the websites, and the
23   websites are not mentioned during the sales pitch.
     [83] *See, e.g.*, PX8 ¶ 6 at 525-26; PX12 ¶ 7 at 623-24; PX21 ¶ 8 at 764.
24   [84] *See* fn. 71, *supra.*
     [85] *See, e.g.*, PX5 ¶ 5 at 445; PX16 ¶ 3 at 691; PX18 ¶ 4 at 717; PX21 ¶ 3 at 762.
25   [86] PX31 ¶ 8 at 918-19.
26   [87] PX2 ¶ 3 at 368; PX4 ¶ 2 at 402; PX6 ¶ 4 at 470; PX8 ¶ 3 at 524-25; PX10 ¶ 3 at
     572-73; PX11 ¶ 3 at 590-91; PX19 ¶ 3 at 730-31; PX26 ¶ 4 at 838; PX 28 ¶ 4 at 876-
27   77; PX30 ¶ 3 at 913-14.

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 14

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

or a non-profit organization can enroll in the PSLF.[88]  Finally, Defendants falsely claim to provide loan forgiveness after payment of their fee.[89]  There is no program providing loan forgiveness after payment of a fee.[90]

Second, Defendants also claim they will enroll consumers in a loan discharge program that they have called the "Cause of Action Grievance," claiming that that consumers are eligible for this program because they are victims of the predatory lending practices of their colleges.[91]  This claim is also false or unsubstantiated.  The only ED program that might be available to alumni of colleges that engaged in "predatory lending practices" is the BDR.[92]  At this time, even experts in student loan payment programs have difficulty determining what constitutes a successful BDR claim.[93]  The ED has processed BDR applications for certain former students of Corinthian College, Inc. ("CCI").[94]  These applications were evaluated based on findings the ED adopted based on a judgment entered against CCI.[95]  The ED has already completed its evaluation of most BDR claims by former CCI students.[96]  The ED proposed implementation of a Borrower Defense Rule, which was to go into effect this past summer, but the rule did not go into effect and there are currently no established guidelines for evaluating BDR applications.[97]  Moreover, the loans of borrowers who apply for BDR are often

---

[88] PX31 ¶ 7 at 918.

[89] PX3 ¶¶ 5-6 at 384; PX7 ¶¶ 7-8 at 488; PX9 ¶ 4 at 557; PX13 ¶ 4 at 644; PX15 ¶ 3 at 675-76; PX22 ¶ 3 at 783-84; PX23 ¶¶ 3-5 at 799-800; PX24 ¶ 3 at 813-14; PX25 ¶¶ 3-4 at 823-24; PX27 ¶ 4 at 859; PX29 ¶ 5 at 892.

[90] PX31 ¶ 15 at 921-22.

[91] See fn. 72, supra.

[92] PX31 ¶¶ 4-6 at 916-18.

[93] Id. ¶ 4 at 916.

[94] Id. ¶ 5 at 916-17.

[95] Id.

[96] Id.

[97] Id. ¶¶ 4-5 at 916-17.  The rule would have created a new federal standard for borrowers who received loan disbursements on or after July 1, 2017.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 15

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

placed into forbearance for a year or more. If the ED denies their applications, their loan balances will increase by the amount of unpaid interest accrued during the forbearance. As a result, those consumers will owe more than they owed prior to applying.[98]

Third, Defendants' falsely claim to enroll consumers in programs providing reduced, often permanently reduced, monthly payments.[99] While it is possible for federal student loan borrowers to secure reduced monthly payments under an IDR, no IDR program provides permanently reduced payments. Borrowers are required to reapply annually for reduced payments under IDR, and the payments increase as the borrower's income increases.[100] Defendants cannot enroll consumers in any IDR plan.[101]

Fourth, Defendants' claim to enroll consumers in a program providing permanently reduced or eliminated interest is also false.[102] The government sets the interest rate for federal student loans via statute and there are no 0% interest federal student loans.[103]

Fifth, and finally, Defendants' claim that they work directly with the ED, or are authorized or certified by the ED is patently false.[104] The ED does not work with third parties offering debt relief services.[105] Defendants can only submit applications for ED programs on consumers' behalf by convincing the consumer to provide their account information so that they can access consumers' accounts

---

[98] *Id.* ¶ 6 at 917-18.
[99] *See* fn. 73, *supra.*
[100] PX31 ¶ 8 at 918-19, ¶ 16 at 922-23.
[101] *Id.* ¶ 3 at 915-16, ¶ 17 at 923-25.
[102] *See* fn. 74, *supra.*
[103] PX31 ¶ 16 at 923, ¶ 18 at 925-27.
[104] *See* fn. 75, *supra.*
[105] PX31 ¶ 3 at 915-16; ¶ 14 at 921.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 16

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

posing as the consumer.[106]  Once they have gained access, Defendants change

consumers' PINs, passwords, and contact information, which can block consumers

from accessing their own accounts and prevent loan servicers from contacting

those consumers.[107]

Because of Defendants' false and unsubstantiated claims, consumers have

paid tens of millions of dollars to Defendants to enroll them in programs

purportedly providing loan forgiveness, discharge and other debt relief, when

Defendants do not provide such services.[108]  Consumers have testified

unequivocally that they would never have agreed to pay the requested fee had they

known that Defendants only fill out ED forms consumers can fill out

themselves.[109]  In addition to losing the money paid as a fee to Defendants, after

agreeing to Defendants' services, some consumers find themselves in worse

positions relative to their loan status.[110]  Some consumers discovered that

Defendants applied for forbearance without their knowledge and, in forbearance,

loan balances increase because unpaid accrued interest is added to the loan

---

[106] *See, e.g.*, PX3 ¶ 4 at 383-84; PX17 ¶ 4 at 709-10; PX18 ¶ 6 at 717-18; PX19 ¶ 4 at 731; PX31 ¶ 2 at 915; ¶ 23 at 932; *see, also, Id.* ¶¶ 24-25 at 932-33 (Defendants use invalid power of attorney).

[107] *See, e.g.*, PX4 ¶ 9 at 405; PX 24 ¶¶ 3-4 at 813-14; PX31 ¶ 23 at 932 (ED authorized loan servicer Great Lakes reported that 820 borrower email addresses were changed to an email address it associated with EZ Doc Preps and First Student Aid).

[108] *See, e.g.*, PX4.1 ¶ 2 at 431; PX 5 ¶ 9 at 447; PX 9 ¶ 7 at 558-59.  Sales calls often last for at least 20 to 45 minutes and up to two hours.  Defendants do not disclose during the lengthy calls that they only provide document preparation services. *See, e.g.*, PX4 ¶ 5 at 403-04; PX8 ¶ 4 at 525; PX10 ¶ 5 at 573; PX 12 ¶ 3 at 622; PX13 ¶ 4 at 644; PX19 ¶ 5 at 731; PX29 ¶ 6 at 892, ¶ 11 at 894.

[109] *See, e.g.*, PX5 ¶ 12 at 448; PX7 ¶ 10 at 489; PX13 ¶ 7 at 645; PX16 ¶ 6 at 693; PX17 ¶ 7 at 711; PX23 ¶ 8 at 801; PX29 ¶ 11 at 894.  In some instances, when Defendants do fill out ED forms for consumers, they falsify the consumers' qualifications for the ED program. *See, e.g.*, PX6 ¶ 8 at 471-72; PX12 ¶¶ 5-8 at 623-24, Att. C at 637-39.

[110] *See, e.g.*, PX3 ¶ 9 at 386; PX7.1 ¶ 3 at 522; PX12 ¶ 6 at 623-24; PX29 ¶ 9 at 893.

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1  balance.[111]  Other consumers discovered that Defendants applied for loan

2  consolidation without their knowledge, resulting in new 20-year loans, which

3  substantially increases their total loan repayment amount.[112]  One consumer

4  discovered that, because Defendants submitted a loan consolidation application on

5  her behalf, she had permanently lost the ability to enroll in IDR and PSLF, plans

6  for which she previously qualified.[113]  Others' loans became delinquent after

7  signing on for Defendants' service.[114]

8  **IV.   A TEMPORARY RESTRAINING ORDER SHOULD ISSUE**

9  **AGAINST THE DEFENDANTS**

10     **A.   This Court Has the Authority to Grant the Requested Relief**

11          This Court has the authority to grant temporary, preliminary, and permanent

12  relief pursuant to the second proviso of Section 13(b) of the FTC Act, 15 U.S.C.

13  § 53(b), which states, "in proper cases the Commission may seek, and after proper

14  proof, the court may issue, a permanent injunction."[115]  The Ninth Circuit has

15  recognized that any case alleging violations of a law enforced by the FTC

16  constitutes a proper case for which the FTC may seek injunctive relief.[116]

17  Moreover, Section 13(b) preserves the Court's inherent authority to order not only

18  permanent relief, restitution, and disgorgement of ill-gotten gains, but also to grant

19

20

21  ───────────────

22  [111] *See, e.g.*, PX11 ¶ 6 at 591; PX12 ¶ 3 at 622, ¶ 6 at 623-24; PX14 ¶ 5 at 663; *see, also*, PX31 ¶ 11 at 920.

23  [112] *See, e.g.*, PX 12 ¶ 6 at 623-24; PX13 ¶ 6 at 645; PX16 ¶ 5 at 692; *see, also*, PX31 ¶¶ 9-10 at 919-20.

24  [113] PX7.1 ¶ 3 at 522.

25  [114] *See, e.g.*, PX3 ¶ 9 at 386; PX22 ¶ 5 at 784.

26  [115] *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1110 (9th Cir. 1982); s*ee also, FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984).

27

28  [116] *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 18

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1 ancillary and preliminary equitable relief.[117] The Ninth Circuit has held that a

2 court may exercise the full breadth of its equitable authority in a Section 13(b)

3 action because Congress "did not limit that traditional equitable power" when

4 enacting the FTC Act.[118] Here, where the public interest is at stake, exercise of the

5 Court's broad equitable power is particularly appropriate.[119]

6 **B.    The FTC Meets the Standard for Granting A Government

7     Agency's Request for Preliminary Injunctive Relief**

8 In determining whether to grant a preliminary injunction under Section

9 13(b), a court "must 1) determine the likelihood that the Commission will

10 ultimately succeed on the merits and 2) balance the equities."[120] Unlike private

11 litigants, the FTC need not prove irreparable injury, because injury is presumed.[121]

12 Although the FTC need not prove irreparable injury, the FTC has presented

13 sufficient evidence to establish that consumers will suffer irreparable harm from

14 Defendants' continued unlawful activities. Moreover, in balancing the equities, the

15 public interest should receive greater weight than private interests.[122] As set forth

16 in this Memorandum, the FTC has amply demonstrated that it will ultimately

17 succeed on the merits of its claims and that the balance of equities favors

18 injunctive relief.

19

20 _____

21 [117] *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009); *FTC v. Pantron I Corp.*, 33
F.3d 1088, 1102 (9th Cir. 1994); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344,
22 346-47 (9th Cir. 1989).
23 [118] *Singer, Inc.*, 668 F.2d at 1113.
[119] *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 857 (9th Cir. 1995); *Pantron I
24 Corp.*, 33 F.3d at 1102; *World Wide Factors*, 882 F.2d at 347.
25 [120] *Affordable Media*, 179 F.3d at 1233 (quoting *FTC v. Warner Commc'ns, Inc.*, 742
F.2d 1156, 1160 (9th Cir. 1984)); *see, also World Wide Factors*, 882 F.2d at 346 (9th
26 Cir. 1989) (holding same).
27 [121] *Id.*
[122] *World Wide Factors*, 882 F.2d at 347.
28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 19

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1. <u>The FTC Has Demonstrated It Is Likely to Succeed on the Merits</u>

Generally, the FTC "meets its burden on the likelihood of success issue if it shows preliminarily, by affidavit or other proof, that it has a fair and tenable chance of ultimate success on the merits."[123] Moreover, in considering an application for a TRO or preliminary injunction, the Court has the discretion to consider hearsay evidence.[124]

Section 5 of the FTC Act prohibits any material representation or omission that would likely mislead consumers acting reasonably under the circumstances.[125] A claim is considered material if it "involves information that is important to consumers and, hence, is likely to affect their choice of, or conduct regarding, a product."[126] The Court is not confined to analyzing isolated words and phrases, but must consider the overall "net impression" that Defendants' representations make upon consumers.[127] A solicitation "capable of being interpreted in a misleading way" is construed against the maker of the solicitation.[128] Moreover, courts have held that an unqualified results claim implies that consumers generally

---

[123] *FTC v. Beatrice Foods Co.*, 587 F.2d 1225, 1229 (D.C. Cir. 1978) (quoting *FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1090 (S.D.N.Y. 1977)).

[124] *Flynt Distrib. Co., Inc., v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (court may give inadmissible evidence some weight when doing so serves purpose of preventing irreparable harm before trial); *see also Heideman v. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (Federal Rules of Evidence do not apply to preliminary injunction hearings).

[125] *Stefanchik*, 559 F.3d at 928; *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006); *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001); *Pantron I Corp.*, 33 F. 3d at 1095 (quoting *In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 164-65 (1984)).

[126] *Cyberspace.com*, 453 F. 3d at 1201.

[127] *Id.* at 1200 (solicitation can be deceptive by virtue of its net impression even if it contains truthful disclosures), *cited in Stefanchik*, 559 F.3d at 928; *FTC v. Gill*, 71 F. Supp. 2d 1030, 1043 (C.D. Cal. 1999).

[128] *Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1146 (9th Cir. 1978) (quoting *Resort CarRental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975)).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 20

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1   will receive the claimed results and that the benefit is a significant one.[129]  Express

2   claims and deliberate implied claims are presumed to be material, so consumers are

3   not required to question their veracity to be deemed reasonable.[130]

4        As described in Section III.B, *supra*, Defendants violate Section 5(a) by

5   making express false claims that: 1) Defendants are part of, affiliated with, or work

6   directly with the government, government loan programs, the ED, or consumers'

7   loan servicers; 2) consumers who purchase Defendants' debt relief services

8   generally will have their monthly payments reduced or their loan balances forgiven

9   in whole or in part; and 3) consumers are qualified for, or are approved to receive

10  loan forgiveness or other programs that will permanently lower or eliminate their

11  loan payments or balances. Defendants make these false claims to induce

12  consumers to pay exorbitant fees for what are merely document preparation

13  services, the limited extent of which are not adequately disclosed to the consumer.

14       These misrepresentations are not cured by the contradictory and sometimes

15  obscured disclaimer language in the "agreement" that Defendants pressure

16  consumers to e-sign at the end of the deceptive sales call.[131]  The lengthy

17  document—which consumers are rushed to e-sign *only after* they have already

18  divulged their payment and other personal information—contains buried

19  disclaimers and false and contradictory statements.  As the consumer testimony

20

21  [129] *FTC v. Five-Star Auto Club,* 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000) ("At the

22  very least it would have been reasonable for consumers to have assumed that the
    promised rewards were achieved by the typical Five Star participant.") *Id.*

23  [130] *Pantron I Corp.*, 33 F.3d at 1095-96; *FTC v. Thompson Medical Co.*, 104 F.T.C.

24  648, 816 (1984), *aff'd,* 791 F.2d 189 (D.C. Cir. 1986).

    [131] *See Resort Car Rental Sys., Inc.*, 518 F.2d at 964 (The FTC Act is violated "if it

25  induces the first contact through deception" despite buyer later obtaining more

26  information); *FTC v. Gill*, 71 F. Supp. 2d at 1043 (reliance on a disclaimer in a
    contract that "consumers eventually sign" fails because "the disclaimer is not included

27  in the representations" and "each representation must stand on its own merits, even if

28  other representations contain accurate, non-deceptive information").

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 21

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1  and hundreds of complaints from consumers who believed Defendants'
2  misrepresentations demonstrate, Defendants' late disclaimers are ineffective.[132]
3  Moreover, the "disclosures" in the contracts that Defendants rush consumers to
4  sign are not legally sufficient to neutralize the deception that occurs during often
5  quite lengthy sales presentations.[133]

6      Defendants' conduct also violates three provisions of the TSR.  The TSR has
7  provisions that specifically apply to sellers or telemarketers of "debt relief
8  services," which it defines as "any program or service represented, directly or by
9  implication, to renegotiate, settle, or in any way alter" debt between a consumer
10 and unsecured creditors.[134]  The TSR prohibits debt relief sellers or telemarketers
11 from misrepresenting an affiliation with the government and any other material
12 aspect of their services.[135]  The TSR also prohibits sellers and telemarketers from
13 requesting or receiving payment of any fees prior to the successful renegotiation or
14 reduction of at least one of the consumer's debts, and prior to the consumer making
15 at least one payment pursuant to such reduction.[136]

16

17

---

18 [132] *See Cyberspace.com*, 453 F. 3d at 1201 (proof that representation actually
19 deceived consumers is "highly probative to show that a practice is likely to mislead
   consumers acting reasonably under the circumstances").
20 [133] *Cyberspace.com,* 453 F. 3d at 1200-01 (a solicitation may mislead by virtue of net
21 impression even though it also contains truthful information); *FTC v. Johnson*, 96 F.
   Supp. 3d 1110, 1139 (D. Nev. Mar. 31, 2015) (fine print disclosures offered after the
22 consumer had started the ordering process did not alter the misleading net impression
23 created by the solicitation).  It is also no defense that the service Defendants do
   provide may have some value to some consumers. *FTC v. Figgie Int'l, Inc.*, 994 F.2d
24 595, 604 (9th Cir. 1993) (when something is sold through a misrepresentation, it does
25 not matter that it may have some value, it is in the method and practice of the selling
   that the fraud occurred).
26 [134] 16 C.F.R. ¶310.2(o).
27 [135] 16 C.F.R. § 310.3(a)(2)(vii), (x).
28 [136] 16 C.F.R. § 310.4(a)(5)(i).

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1    The FTC has presented abundant evidence showing it is likely to succeed on

2  the merits of its claims that Defendants violated Section 5 of the FTC Act and

3  multiple provisions of the TSR.[137]

4    2.  The Equities Weigh in Favor of Granting Injunctive Relief

5    Once the FTC establishes the likelihood of its ultimate success on the merits,

6  preliminary injunctive relief is warranted if the Court, weighing the equities, finds

7  that relief is in the public interest.  In balancing the equities between the public and

8  private interest, "public equities receive far greater weight."[138]  Because

9  Defendants "can have no vested interest in business activity found to be illegal,"[139]

10  a balance of equities tips definitively toward granting the requested relief.[140]

11    The evidence demonstrates that the public equities -- protection of

12  consumers from Defendants' deceptive marketing of their services, effective

13  enforcement of the law, and the preservation of Defendants' assets -- weigh

14  heavily in favor of granting the requested injunctive relief.  Granting such relief is

15  also necessary because Defendants' conduct indicates that they will likely continue

16  to deceive the public.[141]

17    In contrast, "there is no oppressive hardship to defendants in requiring them

18  to comply with the FTC Act, refrain from fraudulent representation or preserve

19

20  _____

21  [137] *See, supra*, Section III.B.

22  [138] *Warner Commc'ns, Inc.*, 742 F.2d at 1165.  *See also Affordable Media*, 179 F.3d at 1236 (quoting *World Wide Factors, Ltd.*, 882 F.2d at 347) .

23  [139] *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972) (quoting *United States v. Ellis Research Laboratories , Inc.*, 300 F.2d 550,554 (7th Cir. 1962)).

24  [140] *Commodity Futures Trading Comm'n v. British Am. Commodity Options Corp.*,

25  560 F.2d 135, 143 (2d Cir. 1977) ("A court of equity is under no duty 'to protect

26  illegitimate profits or advance business which is conducted [illegally].'") (quoting *FTC v. Thomsen-King & Co.*, 109 F.2d 516, 519 (7th Cir. 1940)).

27  [141] *Five-Star Auto Club*, 97 F. Supp. 2d at 536 ("[P]ast illegal conduct is highly

28  suggestive of the likelihood of future violations).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO  - 23

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1   their assets from dissipation or concealment."[142]  Because the injunction will

2   preclude only harmful, illegal behavior, the public equities supporting the proposed

3   injunctive relief outweigh any burden imposed by such relief on Defendants and

4   the public interest is served by stopping the illegal behavior.[143]

## C. Defendants are a Common Enterprise and Jointly and Severally Liable for the Law Violations

7       "When one or more corporate entities operate as a common enterprise, each

8   may be held liable for the deceptive acts and practices of the others."[144]  When

9   determining whether a common enterprise exists, "the pattern and frame-work of

10   the whole enterprise must be taken into consideration."[145]  Courts look to a variety

11   of factors including: common control, the sharing of office space and officers,

12   whether the business is operated through a maze of interrelated companies, unified

13   advertising, and evidence showing strongly interdependent economic interests or

14   the pooling of assets and revenues.[146]  No one factor is controlling.[147]

15       The FTC has submitted substantial evidence of the entities' "interdependent

16   economic interests."  The Corporate Defendants use the same telephone sales room

17   located at 1435 S. La Cienega Blvd.,[148] and telephone accounts, established by

---

[142] *World Wide Factors,* 882 F.2d at 347.

[143] *See, e.g., Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 697-98 (1978).

[144] *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000), *aff'd* 312 F.3d 259 (7th Cir. 2002) (citing *Sunshine Art Studios, Inc. v. FTC*, 481 F.2d 1171, 1175 (1st Cir. 1973); *Delaware Watch Co. v. FTC*, 332 F.2d 745, 746-47 (2d Cir. 1964)).

[145] *FTC v. Wyndham Worldwide Corp.*, 2014 WL 2812049, at *5 (D. N.J. June 23, 2014), (quoting *Delaware Watch Co.,* 332 F.2d at 746).

[146] *FTC v. Direct Benefits Group, LLC*, 2013 WL 3771322, at *18 (M.D. Fla. July 18, 2013).

[147] *FTC v. Consumer Health Benefits Association*, 2011 WL 3652248 at *5 (E.D. N.Y. Aug. 18, 2011).

[148] PX1 ¶ 34 at 43, ¶ 41.d at 45, Att. AA at 248; ¶ 60.a at 52.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 24

Naderi, Rubeni, and Gabbaie, to conduct sales.[149]  The Corporate Defendants offer

and sell the same services and use the same contract and other forms.[150]  When

consumers purchase Defendants' services under any name, they receive identical

welcoming e-mails that provide access to a new online account through the same

"student debt portal."[151]  Defendants also maintain a shared customer database,[152]

and several consumers report that their transaction involved two or more of the

Corporate Defendants.[153]  Bank records also show that, while each entity maintains

some separate sales staff, they also share several key employees[154] and commingle

funds.[155]

### D. The Individual Defendants are Liable for Injunctive and Monetary Relief

The Individual Defendants are liable for injunctive and monetary relief for

the law violations committed by the Corporate Defendants.  To obtain an

injunction against an individual, the FTC must show that the individual either had

---

[149] PX1 ¶¶ 32-36 at 43, Att. W at 138-40.

[150] *See, e.g.*, PX3 Att. A at 388-97 (ULC/Alumni); PX7 Att. A at 490-99 (Academy Doc Prep); PX9 Atts. A and B at 561-71 (Allied); PX12 Atts. A and B at 626-36 (EZ Doc Preps); PX19 Att A. at 734-43 (First Grad Aid); PX29 Att. B at 899-910 (Premier).

[151] *Id.*

[152] This is demonstrated by the fact that when an FTC investigator made an undercover call to EZ Doc Preps and later to First Grad Aid using the same undercover phone, the FGA representative was able to identify him from his undercover telephone number.  PX36 lns. 8-16 at 1360-61.

[153] *See, e.g.*, PX2 ¶ 3 at 368, Att. A at 373 (Alumni Aid/First Document Aid); PX17 ¶¶ 4-6 at 709-11 (EZ Doc Preps/FDA/Grads Aid/Academic Aid Center/Academy Doc Prep); PX21 ¶ 2 at 761, ¶ 11 at 765 (First Grad Aid/United Legal Discharge); PX22 ¶ 2 at 783, Att. A at 788.

[154] PX38 ¶¶ 3-4 at 1405-06, Atts. A-B at 11407-18.

[155] PX37 ¶¶ 9-19 at 1379-80.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO  - 25

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1    the authority to control the unlawful activities or participate directly in them.[156]   In

2    general, an individual's status as an officer, or as someone with the authority to

3    sign documents on the corporation's behalf, gives rise to a presumption of

4    authority to control a small closely held corporation.[157]   Assuming the duties of a

5    corporate officer is probative of an individual's participation or authority.[158]

6         An individual subject to injunctive liability is liable for monetary redress for

7    corporate practices if the individual had, or should have had, knowledge or

8    awareness of the corporate defendant's misrepresentations.[159]   This knowledge

9    element, however, need not rise to the level of subjective intent to defraud

10   consumers.[160]   Instead, the FTC need only demonstrate that the individual had

11   actual knowledge of material misrepresentations, reckless indifference to the truth

12   or falsity of such representations, or an awareness of a high probability of fraud,

13   coupled with an intentional avoidance of the truth.[161]   "Participation in corporate

14   affairs is probative of knowledge."[162]

15        As discussed above, Naderi, Gabbaie, Rubeni, Reuveni, Ratliff, and

16   Azinkhan are each a principal of one or more Corporate Defendants.  They have

17   signatory authority over corporate bank accounts and merchant accounts used to

18

---

19   [156] *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1138 n.9 (9th Cir. 2010) (citing
20   *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997)).
21   [157] *Publ'g Clearing House*, 104 F.3d at 1171.
     [158] *FTC v. Amy Travel Servs., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989.
22   [159] *Network Servs. Depot*, 617 F.3d at 1138-39; *Stefanchik*, 559 F.3d  at  931.
23   [160] *Affordable Media*, 179 F.3d at 1234; *Amy Travel Servs.*, 875 F.2d at 574.
     [161] *Network Servs. Depot*, 617 F.3d at 1138-39; *Stefanchik*, 559 F.3d at 93;
24   *Cyberspace.com*, 453 F.3d at 1202.
25   [162] *Affordable Media*, 179 F.3d at 1235 (quoting *Amy Travel*, 875 F.2d at 574) (control
     of telemarketing company was "strong evidence of . . . knowledge"). *See, e.g.*,
26   *Network Servs. Depot*, 617 F.3d at 1138-40 (distribution of deceptive promotional
27   materials was evidence of knowledge); *Publ'g Clearing House*, 104 F.3d at 1171
     (company president's work as telephone solicitor was evidence of her knowledge).
28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 26

process consumer payments.[163]  All but Rubeni have established and/or paid for
multiple Internet and email domain names used by the Corporate Defendants. [164]
Naderi, Rubeni, and Gabbaie are responsible for the two telephone accounts used
by the Defendants to market their services.[165]  The Individual Defendants had both
the authority to control and direct knowledge, at a minimum reckless disregard for
the representations made by their telemarketers to consumers, of the Corporate
Defendants' wrongful acts.  Accordingly, they are liable for both injunctive *and*
monetary relief for their violations of the FTC Act and the TSR.

**E.    An Asset Freeze is Necessary to Preserve the Court's Ability to Fashion Meaningful Relief**

As part of the permanent relief in this case, the FTC will seek equitable
monetary relief, including consumer restitution.  To preserve the availability of
funds for such equitable monetary relief, the FTC requests that the Court issue an
order freezing the Corporate and Relief Defendants' assets and at least temporarily
freezing the assets of the Individual Defendants.  Such an order is well within the
Court's authority,[166] and similar to the equitable relief granted in prior FTC cases
in this District and the Ninth Circuit.[167]

A party seeking an asset freeze must show a likelihood of dissipation of the
claimed assets or other inability to recover money damages, if relief is not
granted.[168]  An asset freeze is justified where, as here, the business is permeated

---

[163] PX1 ¶¶ 37-59 at 44-52.
[164] PX1 ¶¶ 22-23 at 39-40.
[165] PX1 ¶¶ 32-36 at 43-44.
[166] *World Wide Factors*, 882 F.2d  at 347 ("Since the FTC has shown a probability of success on the merits, the district court did not abuse its discretion in granting the injunction to freeze World Wide's assets"); *H.N. Singer*, 668 F.2d  at 1113 ("13(b) provides a basis for an order freezing assets").
[167] See, Certification and Decl. of Counsel ¶¶ 11-12 (file concurrently herewith).
[168] *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *but see FTC v. Wealth Educations, Inc.*, CVC12-02357 SJO (JEMx) (C.D. Ca. Apr. 6, 2015) (Order Freezing

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO  - 27

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1   with fraud.[169]  Courts have also frozen individuals' assets where they controlled the

2   deceptive activity and had actual knowledge or constructive knowledge of the

3   deceptive practices.[170]

4           A freeze of the Corporate Defendants' assets and at least a temporary freeze

5   of the Individual Defendants' assets is appropriate here to preserve the *status quo*,

6   to ensure that funds do not immediately disappear and to preserve Defendants'

7   assets for final relief.  The Corporate Defendants have fraudulently extracted more

8   than $20 million from consumers since mid-2015[171] and the Individual Defendants

9   have lied on merchant account applications in order to obtain merchant accounts

10  through which they process the deceptively-secured consumer payments.  On the

11  merchant account applications the FTC has obtained, the Individual Defendants

12  stated on some of the applications that they were engaged in retail business, which

13  is false.[172]  In other merchant applications Defendants identified their business as

14  "document preparation," but on one, Naderi was required to submit a statement

15  that, "Merchant understands that they will not accept loan payments or perform

16  any loan business modifications.  The merchant will present the legal government

17  program that has been made public by the U.S. government to assist students in

18  their repayment plan.  Once the student has chosen the government payback plan,

19  the merchant will assist in selecting and filling out the proper paperwork (emphasis

20  added)." [173]  Consumer evidence shows that Defendants do not represent their

21

22  Assets, ECF 14 at 9) ("[W]hen a government agency is a movant, the mere
23  'possibility (as opposed to likelihood) of dissipation of assets is sufficient to justify a
    freeze.")
24  [169] *See, e.g. SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972);
25  *SEC v. R.J. Allen & Associates, Inc.*, 386 F. Supp. 866, 881 (S.D. Fla. Nov. 29, 1974).
    [170] *Amy Travel*, 875 F.2d at 574.
26  [171] PX37 ¶ 8 at 1378-80, ¶ 35 at 1382, Att. B at 1386.
27  [172] PX1 ¶¶ 38-40 at 44-45, Atts. X-Z at 145, 184, 224.
28  [173] *Id.* ¶ 42 at 46, Att. BB at 259, 262.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 28

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1   services this way and that this statement is false.

2   Moreover, the Individual Defendants have taken from the corporations all

3   profits from their unlawful business operation and it is not possible to discern

4   where those funds have been placed.  Bank records the FTC obtained through

5   compulsory process show that $4.5 million have been transferred out of the

6   company in large chunks, mostly in the past year.[174]  Without a temporary freeze of

7   assets and a full accounting, we may never know what became of the funds

8   Defendants have received from consumers:  $2 million to Naderi;[175] $608,000 to an

9   unidentified personal bank account;[176] $270,000 to family members;[177] $423,000 to

10  companies set up in the names of employees;[178] $550,000 to an "investment"

11  company owned by an individual who has also been involved in student loan debt

12  relief;[179] $106,000 to a company in the Dominican Republic;[180] $465,472 in

13  withdrawals,[181] and $122,000 to two companies in which an Individual Defendant

14  has an interest.[182]  Without an immediate asset freeze, dissipation and misuse of

15  assets is highly likely and consumers may never receive any of their money back.

16  Indeed, Defendants who have engaged in illegal activities are likely to waste

17  assets prior to resolution of the action.[183]  In the FTC's long experience of

18  enforcing the FTC Act and the TSR, defendants engaging in similarly serious

---

[174] PX37 ¶¶ 20-32 at 1380-98.
[175] *Id.* ¶ 20 at 1380-81, Att. C at 1387.
[176] *Id.* ¶ 25 at 1381-82, Att. G at 1396.
[177] PX1 ¶ 61 at 52-53; PX37 ¶¶ 26-27 at1382, Att. H at 1397-98.
[178] PX1 ¶ 62 at 53, Att. TT at 354-59; PX37 ¶¶ 23-24 at 1381, Atts. E-F at 1390-95; ¶ 30 at 1383, Att. K at 1402; PX38 Att. A at 1407 and 1409 (Katry and James are both employees).
[179] PX1 ¶ 61 at 52-53; PX37 ¶ 29 at 1382, Att. J at 1400-01.
[180] PX37 ¶ 31 at 1383, Att. L at 1403.
[181] *Id.* ¶ 32 at 1383.
[182] PX1 ¶¶ 63-64 at 53, Atts. UU and VV at 360-67; PX37 ¶¶ 21-22 at 1381, Att. D at 1388-89.
[183] *See Manor Nursing Ctrs.*, 458 F.2d at 1106.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO  - 29

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

unlawful practices have secreted assets and destroyed documents upon learning of an impending law enforcement action.[184]  The evidence the FTC has submitted demonstrates that Defendants' enterprise is permeated by deception and unlawful activity.  Without a temporary asset freeze over the Corporate, Individual, and Relief Defendants, a full accounting of all Defendants assets never be obtained or verified and the Court's ability to order consumer restitution will be severely impaired.

### F.    A Temporary Receiver is Needed to Determine the Scope of Injury, Locate and Preserve Business Assets and Records, and Protect Consumers' Personal Financial Records

The FTC seeks appointment of a temporary receiver over the Corporate and Relief Defendants.  This Court has inherent power to appoint a receiver incident to its statutory authority to issue permanent injunctions under Section 13(b) of the FTC Act.[185]  A receiver is needed when a corporate defendant has defrauded the public.[186]

With Defendants in continued control of their business, they are likely to destroy evidence, dissipate the fruits of their fraud, and continue to defraud consumers.  A neutral receiver would prevent further harm to consumers, locate and secure assets and records, assess the extent of the fraud, trace the proceeds of the fraud, prepare an accounting, determine if the company can be operated legitimately and profitably, make an independent report of the Corporate

---

[184]  Certification and Decl. of Counsel ¶¶ 9-12 [filed concurrently herewith].

[185]  *U.S. Oil & Gas*, 748 F.2d  at 1432 .  *See, e.g. FTC v. Advanced Mgmt. Servs. NW, LLC*, CV-10-148-LR (E.D. Wash. May 10, 2010).

[186]  *SEC v. First Fin. Grp. of Texas*, 645 F.2d 429, 438 (5th Cir. 1981) ("hardly conceivable that the trial court should have permitted those who were enjoined from fraudulent misconduct to continue in control of [the corporate defendant.]" quoting *SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963)).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 30

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1  Defendants' activities to the Court, and secure consumer records containing
2  sensitive personal financial other information.

### G. Immediate Access and Limited Expedited Discovery are Necessary

5  The proposed TRO directs the temporary receiver to provide both the FTC
6  and Defendants with reasonable access to corporate Defendants' premises. Such
7  immediate access enables the receiver to quickly and efficiently locate and secure
8  assets Defendants have wrongfully taken from consumers, identify possible
9  additional defendants, locate and secure documents pertaining to Defendants'
10 business, and locate Defendants, should they attempt to evade service. The
11 business premises to which the receiver and the FTC would have immediate access
12 includes the offices and telephone rooms located at 1435 S. La Cienega Blvd.

13 In addition, the FTC seeks permission to conduct depositions with forty-
14 eight hours' notice and to issue requests (or subpoenas) for production of
15 documents on five days' notice for these purposes. District courts may depart from
16 normal discovery procedures,[187] particularly as preliminary relief in a case
17 involving the public interest.[188]

### H. The *Ex Parte* TRO Should Issue Without Notice

19 The Defendants' ongoing and deliberate decption and the risk of dissipation
20 of assets and document destruction in this case, justifies *ex parte* relief without
21 notice. This Court is permitted to enter *ex parte* orders without notice if it appears
22 notice will result in irreparable injury and the applicant certifies the reason why
23 such action is necessary. Fed. R. Civ. P. 65(b); L.R. 7-19.2. Issuing the TRO *ex*
24 *parte* in this case is indispensable to preserving the *status quo* and securing full and

---

26  [187]  *See* Fed. R. Civ. P. 26(d), 30(a)(2), 33(a), and 34(b).
27  [188]  Equitable powers are broader if the public interest is involved. *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S. Ct. 1086, 1089 (1946).

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TRO - 31

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1   effective relief pending a hearing on the preliminary injunction. *Ex parte* TROs

2   are granted to serve the "underlying purpose of preserving the *status quo* and

3   preventing irreparable harm just so long as is necessary to hold a hearing, and no

4   longer."[189]

5   **V.   CONCLUSION**

6       Defendants have caused and likely will continue to cause substantial public

7   injury by deceptively marketing student loan debt relief services to financially

8   vulnerable consumers.  For the reasons stated above, the FTC respectfully requests

9   the proposed *ex parte* TRO to protect the public from further harm and help ensure

10   effective relief for those already harmed.

11

12   Dated:  September 25, 2017                    Respectfully submitted,

13

14                                                s/ Eleanor Durham

15                                                ELEANOR DURHAM

16                                                NADINE S. SAMTER

17                                                Attorneys for Plaintiff

18                                                Federal Trade Commission

19

20

21

22

23

24

25

26

27   [189] *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)

28   (quoting *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 438-39 (1974)).

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350